# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | I.D. No. 1304013732 |
| | ) | |
| JESSIE THOMAS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

*Upon Defendant's Pro Se Motion for Postconviction Relief:* **DENIED.**

1.   On the night of April 15, 2013, the Wilmington Police Department received a tip from a confidential informant ("C.I.") that a black male known as "Black Nose" had just pointed a firearm at another black male.[1]  The C.I. reported that Black Nose was driving a white Volvo in the area of Sixth and Jefferson Streets in Wilmington and was dressed in a gray jacket and blue jeans.[2]

2.   After receiving the tip, Officer Matthew Geiser and Corporal Justin Cannon drove to Sixth and Jefferson Streets and observed a while Volvo station wagon at that corner.[3]  The officers could see a black male wearing a gray jacket sitting in the driver's seat of the Volvo.[4]  The officers followed the vehicle, and

---

[1] February 26, 2014 Trial Transcript ("Tr. Tran.") at 30.
[2] *Id.*
[3] *Id.* at 5–6.
[4] *Id.* at 8–9.

after observing the Volvo pull to the side of the road without signaling, Officer Geiser and Corporal Cannon initiated a motor vehicle stop for the traffic violation.[5]

3.   As Officer Geiser approached the driver's side of the vehicle, he observed the driver sitting with his hand out of the window.[6]  Because of heavy window tinting, Officer Geiser asked the driver to keep his hands in plain sight.[7] Officer Geiser testified that the driver abruptly moved his hands into his lap area and in response, Officer Geiser pulled his service weapon.[8]

4.   Officer Geiser directed Thomas to exit the vehicle and another officer patted him down.[9]  While this was happening, Officer Joseph Lucyk arrived as back up and checked the Volvo for passengers.[10]  At trial, Officer Lucyk testified that while shining his flashlight into the open driver's side door he could see the barrel of a gun protruding from underneath the driver's seat.[11]  Upon observing the firearm, Officer Lucyk alerted the other officers that the driver should be taken into custody.[12]

---

[5] *Id.* at 10–11.
[6] *Id.* at 13–14.
[7] *Id.* at 13–16.
[8] *Id.* at 15–16.
[9] *Id.* at 16–17.
[10] *Id.* at 38.
[11] *Id.* at 38–40.
[12] *Id.* at 17, 39–40.

5. The driver, Defendant Jessie Thomas, was placed under arrest.[13] Officer Geiser drove Thomas to the police station in his patrol vehicle.[14] Corporal Cannon drove the Volvo to the police station and secured it at the station.[15] After obtaining a search warrant, Corporal Cannon searched the Volvo and seized a loaded semiautomatic Taurus handgun from under the front seat, a loaded semiautomatic Mauser handgun found to the left of the brake pedal, and personal papers and photographs of Thomas.[16]

6. On May 28, 2013, Thomas was indicted on two counts of Possession of a Firearm by a Person Prohibited ("PFBPP"), two counts of Carrying a Concealed Deadly Weapon ("CCDW"), and one count of Possession of Ammunition by a Person Prohibited ("PABPP").

7. A three-day jury trial was held in February 2014. At trial, the parties stipulated that Thomas was a person prohibited from possessing a firearm and ammunition. On February 27, 2014, the jury convicted Thomas of single counts of PFBPP, CCDW, and PABPP. Thomas was acquitted on the remaining counts. On August 28, 2014, Thomas was sentenced to a total of twenty-one years at Level V, suspended after seven years, for decreasing levels of supervision.

---

[13] *Id.*
[14] *Id.* at 20, 21.
[15] *Id.*
[16] *Id.* at 52–61.

8. Thomas filed a direct appeal to the Delaware Supreme Court arguing that: (1) Detective Barnes and Officer Geiser's trial testimony was inadmissible hearsay; (2) Officer Geiser and Corporal Cannon did not have a legitimate basis to stop the vehicle; (3) even if the initial traffic stop was valid, Officer Geiser violated Thomas' Fourth Amendment right to be free from unreasonable search and seizure; and (4) there was insufficient evidence to support his convictions.[17] On May 8, 2015, the Supreme Court affirmed the judgment of the Superior Court, finding that Thomas' appeal was "wholly without merit and devoid of any arguably appealable issue."[18]

9. On May 29, 2015, Thomas filed this *pro se* Motion for Postconviction Relief ("Rule 61"). Superior Court Criminal Rule 61 governs motions for postconviction relief.[19] Before addressing the merits of any claim for postconviction relief, the Court must first determine whether any of the procedural bars under Rule 61 are applicable.[20] Rule 61(i)(1) provides that a motion for postconviction relief must be filed within one year of a final judgment of conviction.[21] Under Rule 61(i)(2), any ground not asserted in a prior postconviction proceeding is barred "unless consideration of the claim is warranted

---

[17] *Thomas v. State*, 2015 WL 2169288 (Del. 2015).
[18] *Id.* at *3.
[19] Super. Ct. Crim. R. 61.
[20] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[21] Super. Ct. Crim. R. 61(i)(1).

in the interest of justice."[22] Rule 61(i)(3) bars consideration of any claim not asserted in the proceedings leading up to the judgment of conviction unless the movant can show "cause for relief from the procedural default" and "prejudice from violation of the movant's rights."[23] Rule 61(i)(4) provides that any ground for relief that was formerly adjudicated is thereafter barred "unless reconsideration of the claim is warranted in the interest of judgment."[24]

10. Even if a procedural defect exists, the Court may consider the merits of the claim if the defendant can show that an exception found in Rule 61(i)(5) applies.[25] Rule 61(i)(5) provides that a defect under Rule 61(i)(1)–(3) will not bar a "colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."[26]

11. Thomas raises three grounds for relief in his Rule 61 Motion: (1) ineffective assistance of counsel; (2) court abuse of discretion; and (3) prosecutor misconduct. Thomas argues his Trial Counsel was ineffective for failing to investigate the basis of the traffic stop and for failing to file a motion to suppress the weapons found after the traffic stop. Thomas also argues that the court abused its discretion by allowing the Grand Jury to dismiss the traffic charges because he

---

[22] Super. Ct. Crim. R. 61(i)(2).
[23] Super. Ct. Crim. R. 61(i)(3).
[24] Super. Ct. Crim. R. 61(i)(4).
[25] Super. Ct. Crim. R. 61(i)(5).
[26] *Id.*

was unable to challenge the validity of the traffic stop. Finally, Thomas argues that it was prejudicial for the State to dismiss the traffic charges because the traffic charges were the probable cause for stopping the vehicle.

12. To prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-prong test of *Strickland v. Washington*,[27] by showing that: (1) trial counsel's performance was deficient; and (2) the deficient performance prejudiced the defense.[28] "Mere allegations of ineffectiveness will not suffice. A defendant must make specific allegations of actual prejudice and substantiate them."[29] When the Court examines a claim of ineffective assistance of counsel, it may address either prong first.[30] If the defendant makes an insufficient showing on one prong, the Court may reject the defendant's claim without analyzing the other prong.[31]

13. To establish prejudice, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[32] After a thorough review of the record of the case and Thomas' arguments, Thomas has failed to satisfy the prejudice prong

---

[27] 466 U.S. 668 (1984).
[28] *Id.* at 687–88, 694.
[29] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996) (citing *Younger*, 580 A.2d at 555–56.
[30] *Strickland*, 466 U.S. at 697.
[31] *Id.* ("In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").
[32] *Albury v. State*, 551 A.2d 53, 58 (1988) (quoting *Strickland*, 466 U.S. at 688, 694.

of *Strickland* because the initial traffic stop was lawful and the officers did not exceed the scope of the traffic stop in violation of the Fourth Amendment.

14. Under the Fourth Amendment, "a traffic stop must be justified at its inception by a reasonable suspicion of criminal activity, and the scope of the stop must be reasonably related to the stop's initial purpose."[33]  In order to justify a pat down during a traffic stop, an officer must have reasonable suspicion that the person is presently armed and dangerous.[34]  Officer Geiser and Corporal Cannon had probable cause to stop Thomas' vehicle because they observed the Volvo pull to the side of the road without signaling.[35]  Once Thomas abruptly moved his hands into his lap area, Officer Geiser had a reasonable suspicion that the Defendant was armed and dangerous.  Officer Geiser testified that Thomas was fidgety and nervous and that he could not see what Thomas was doing inside the vehicle because of the heavy window.[36]  Officer Lucyk then observed a gun in pain view.  Thomas was placed under arrest and a search warrant was obtained to search the vehicle.  Thomas has failed demonstrate that he suffered any prejudice by Trial

---

[33] *State v. Chandler*, 2015 WL 1731508, at *4 (Del. Super. 2015) (citing *Caldwell v. State*, 780 A.2d 1037, 1046–47 (Del. 2001).
[34] *Holden v. State*, 23 A.3d 843, 847 (Del. 2011).
[35] *Id.* ("A police officer who observes a traffic violation has probable cause to stop the vehicle and its driver.").  On appeal, on plain error review, the Delaware Supreme Court held that "Geiser and Cannon had probable cause to stop the Volvo for the traffic violation they observed." *Thomas v. State*, 2015 WL 2169288, at *3.  The Supreme Court also held that "Officer Geiser had a reasonable belief that Thomas was armed and dangerous when, as Geiser approached the Volvo, Thomas suddenly concealed his hands." *Id.*
[36] Tr. Tran. at 14–17.

Counsel's failure to file a motion to suppress and, therefore, he cannot prevail on a claim of ineffective assistance of counsel.

15. Thomas' remaining claims for "court abuse of discretion" and "prosecutor misconduct" are procedurally barred by Rule 61(i)(3). Rule 61(i)(3) bars consideration of any claim not asserted in the proceedings leading up to the judgment of conviction unless the movant can show "cause for relief from the procedural default" and "prejudice from violation of the movant's rights."[37] Thomas is unable to overcome this procedural bar.

16. Even if these claims are not procedurally barred, they are nevertheless meritless. "[T]he State has broad discretion as to whom to prosecute. So long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision of whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."[38] Moreover, contrary to Thomas' assertions, the fact that Thomas was never indicted on the underlying traffic violation did not affect his right to challenge the constitutionality of the traffic stop and subsequent discovery of the weapons.

**WHEREFORE,** Defendant's *Pro Se* Motion for Postconviction Relief is **DISMISSED.**

**IT IS SO ORDERED.**

---

[37] Super. Ct. Crim. R. 61(i)(3).
[38] *Albury*, 551 A.2d at 61 (internal quotations omitted).

_____

Jan R. Jurden, President Judge