# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE )
)
v. ) I.D. No. 1606024326 A&B
)
ELI ESCALERA, )
)
Defendant. )

Submitted: September 3, 2020
Decided: October 30, 2020

***Upon Defendant's Motion for Postconviction Relief***
**DENIED**

***Upon Motion to Withdraw as Counsel***
**GRANTED**

## ORDER

Upon consideration of the Motion for Postconviction Relief filed by Defendant Eli Escalera; Rule 61 of the Superior Court Criminal Rules of Procedure; the facts, arguments, and legal authorities set forth by Defendant; statutory and decisional law; and the entire record in this case, the Court hereby finds as follows:

1. On June 29, 2016, Defendant was arrested for threatening a stranger with a knife. On October 24, 2016, a grand jury issued an indictment for five charges: Aggravated Menacing, Possession of a Deadly Weapon During Commission of a Felony ("PDWDCF"), Possession of a Deadly Weapon By a Person Prohibited ("PDWBPP"), Disorderly Conduct, and Resisting Arrest.

2. Defendant was represented by Misty Seemans, Esquire ("Trial Counsel").

3. Prior to trial, the Court severed the PDWBPP charge from the other charges.

4. The jury acquitted Defendant of Resisting Arrest, but found him guilty of Aggravated Menacing, PDWDCF, and Disorderly Conduct. Following the jury trial, Defendant was found guilty of PDWBPP in a bench trial.

5. On June 26, 2017, the State filed a motion to declare Defendant an habitual offender under 11 *Del. C.* § 4214 (c) and (d). By Order dated August 11, 2017, Defendant was declared an habitual offender. As an habitual offender, Defendant was sentenced as follows: for Possession of a Deadly Weapon During Commission of a Felony, 25 years minimum mandatory at Level V; for Aggravating Menacing, five years at Level V, suspended immediately for four years at Level IV supervision, suspended after six months for two years at supervision Level III; for PDWBPP, three years at Level V, suspended immediately for supervision Level II.

6. Defendant filed a direct appeal. The Delaware Supreme Court affirmed Defendant's conviction and sentencing by Order dated May 25, 2018.[1]

7. On December 14, 2018, Defendant timely filed his first motion for postconviction relief as a self-represented litigant as well as a request for

---

[1] *Escalera v. State*, 2018 WL 2406009, at *6 (Del. May 25, 2018) (TABLE).

appointment of counsel. By Order dated January 3, 2019, this Court granted Defendant's request for representation and Elise Wolpert, Esquire was appointed ("Rule 61 Counsel").[2]

8. At the Court's request, Trial Counsel filed an affidavit addressing the Defendant's claim of ineffective assistance of counsel.

9. Rule 61 Counsel identified no meritorious claims and filed a motion to withdraw pursuant to Superior Court Criminal Rule 61(e)(7).

10. The State opposes Defendant's motion for postconviction relief.

11. Postconviction relief is a "collateral remedy which provides an avenue for upsetting judgments that have otherwise become final."[3] To protect the finality of criminal convictions, the Court must consider the procedural requirements for relief set forth in Rule 61(i) before addressing the merits of Defendant's Motion.[4] If a procedural bar exists, the Court will not consider the merits of the postconviction claim.[5]

---

[2] This Court found that Defendant was entitled to appointment of counsel pursuant to Rule 61 on the grounds that: (1) Defendant's motion was timely; (2) this was Defendant's first motion for postconviction relief; and (3) Defendant was convicted of a Class B felony.
[3] *Flamer v. State*, 585 A.2d 736, 745 (Del. 1990).
[4] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[5] *Id.*

12. Rule 61(i)(1) bars a motion for postconviction relief if the motion is filed more than one year from the final judgment of conviction;[6] this bar is inapplicable as Defendant's Motion was timely. Rule 61(i)(2) bars successive motions for postconviction relief;[7] this bar is inapplicable as this is Defendant's first postconviction motion. Rule 61(i)(3) bars relief if the postconviction motion includes claims that were not asserted in prior proceedings leading to the final judgment, unless the movant shows cause for relief from the procedural bars and prejudice from a violation of the movant's rights.[8] Moreover, Rule 61(i)(4) bars relief if the postconviction motion includes grounds for relief formerly adjudicated in any proceeding leading to the judgement of conviction, in an appeal, or in a postconviction proceeding.[9] If a procedural bar exists, the Court will not consider the merits of the post-conviction claim.[10] Rule 61(i)(3) and (i)(4) do not apply to Defendant's ineffective assistance of counsel claims, as those claims could not be raised on direct appeal.

13. However, Defendant's Motion raises six grounds for relief "not asserted in the proceedings leading to the judgment of conviction" as required by Rule 61(i)(3). Defendant did not allege the following claims on direct appeal: 1)

---

[6] Super. Ct. Crim. R. 61(i)(1).
[7] Super. Ct. Crim. R. 61(i)(2).
[8] Super. Ct. Crim. R. 61(i)(3).
[9] Super. Ct. Crim. R. 61(i)(4).
[10] *Younger*, 580 A.2d at 554.

4

violation of the right to a speedy trial; 2) prosecutorial misconduct during opening statements; 3) prosecutorial misconduct related to the Victim's Compensation Assistance Program funds; 4) juror misconduct; 5) chain of custody; and 6) violation of due process.[11]

14.     Procedural bars for a postconviction claim are not applicable to "a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."[12] In *Wright v. State*, the Delaware Supreme Court applied the narrow "miscarriage of justice exception" of Rule 61(i)(5) to the defendant's claims of *Brady* violations.[13] The Wright Court determined there was a reasonable probability that the verdict might have been different in that case and determined the cumulative impact of the violations created doubt in the outcome of trial.[14] Accordingly, Wright was remanded for a new trial.[15]

15.     Unlike the circumstances in *Wright*, Defendant's contentions fall short of establishing a colorable constitutional violation when considered individually or cumulatively. Further, Defendant has offered no evidence to support the claims and

---

[11] *See* Def.'s Am. Rule 61 Mot.
[12] *Wright v. State*, 91 A.3d 972, 985-86 (Del. 2014) (explaining the miscarriage of justice exception to the procedural bars set forth in Superior Court Criminal Rule of Procedure 61).
[13] *Id.* at 983.
[14] *Id.* at 993-94.
[15] *Id.* at 994.

has not demonstrated that reconsideration of the claims is warranted in the interest of justice. Nor has Defendant presented a colorable claim of a miscarriage of justice because of any constitutional violations to warrant the application of the exception in Rule 61(i)(5). The fundamental legality, reliability, integrity, and fairness of the proceedings leading to Defendant's conviction and sentencing are sound, and Defendant's defaults are not excused. Because the six claims could have been raised on direct appeal, but were not raised, the claims are procedurally barred.

16. Because the procedural requirements of Rule 61(i)(3) and (i)(4) are inapplicable to Defendant's claims as a self-represented litigant for ineffective assistance of counsel, the Court will address those claims on the merits.

17. The Sixth Amendment guarantees defendants in a criminal trial the right to counsel.[16] To assure that the outcome of a criminal trial is just, defendants have "the right to effective assistance of counsel."[17] The standard used to evaluate claims of ineffective assistance of counsel is the two-prong test articulated by the United States Supreme Court in *Strickland v. Washington*,[18] as adopted in Delaware.[19] In order to satisfy *Strickland*, the movant must demonstrate: (1) that counsel's representation fell below an objective standard of reasonableness,[20] and

---

[16] *Gideon v. Wainright*, 372 U.S. 335, 342-43 (1963).
[17] *McMann v. Richardson*, 379 U.S. 759, 771 (1970).
[18] 466 U.S. 668 (1984).
[19] *See Albury v. State*, 551 A.2d 53 (Del. 1988).
[20] *Strickland*, 466 U.S. at 687.

(2) there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.[21] Failure to prove either prong will render the claim insufficient;[22] therefore, even if a defendant can show that counsel made a professionally unreasonable error, the defendant must still show that the error had an effect on the judgment.[23]

18.     With respect to the first prong–performance prong–the movant must overcome the strong presumption that counsel's conduct was professionally reasonable.[24] To satisfy the performance prong, Defendant must assert specific allegations to establish that Trial Counsel acted unreasonably.[25] The United States Supreme Court has pointed to "prevailing professional norms" as the standard against which to judge the reasonableness of counsel's representation, with a great deference to counsel's strategic judgments.[26]

---

[21] *Id.* at 694.

[22] *Id.* at 688; *see also State v. McLaughlin*, 2014 WL 2964945, at *2 (Del. Super. Ct. July 2, 2014), *aff'd*, 2015 WL 1306916 (Del. Mar. 23, 2015) ("Because a defendant must show both that an attorney made a professionally unreasonable error and that the error had an effect on the judgment, failure to prove either is sufficient to defeat a claim of ineffective assistance."); *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996).

[23] *Strickland*, 466 U.S. at 692.

[24] *Id.* at 687-88.

[25] *Id.* at 688; *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996) ("Mere allegations of ineffectiveness will not suffice.").

[26] *Strickland*, 466 U.S. at 688.

19. An attorney may make strategic choices when presenting a client's case,[27] so long as the choice is "well within the range of professionally reasonable judgments . . . ."[28] Simply because another strategy may have produced a better outcome in hindsight is not enough for a court to rule that a lawyer's performance was ineffective, given the strong presumption that the performance was adequate.[29]

20. With respect to the second prong–the "prejudice prong"–the movant must provide concrete allegations of prejudice, specifying the nature of the prejudice and the adverse effects actually suffered.[30] The Court must determine whether there is a reasonable probability that the outcome would have been different had Trial Counsel not made the alleged errors.[31]

21. Defendant first argues that Trial Counsel was ineffective by failing to obtain a DNA sample from the victim's boyfriend. For Defendant to prevail, he must prove Trial Counsel's failure to request independent DNA evidence would have made a difference in the outcome of the case.[32] Defendant has not shown that the collection of the boyfriend's DNA would have made a difference in the outcome

[27] *Id.* at 690-91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . .").

[28] *Id.* at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.").

[29] *See id.* at 680, 689, 712.

[30] *Id.* at 692; *Dawson*, 673 A.2d at 1196.

[31] *Strickland*, 466 U.S. at 694.

[32] *See State v. Thomas*, 2019 WL 3205773, at *3 (Del. Super. Ct. July 16, 2019) (citing *Harrington v. Richter*, 563 U.S. 86 (2011)).

of the case. Further, Trial Counsel's decision not to collect the DNA was a reasonable trial strategy. Strategically, an attorney's decision not to request independent testing of DNA is within the range of reasonable judgments. At trial, it was established that DNA belonging to an unknown male was found on the knife, and that no conclusions could be made as to Defendant.[33] In her affidavit, Trial Counsel explained her concern that if the DNA results were not consistent with the victim's boyfriend, she would be prohibited from making the argument that another person pointed the knife and that would weaken her trial strategy.[34] Additionally, the record reflects that Trial Counsel argued the issue of the unknown male's DNA on the knife in her closing argument.[35] Thus, Trial Counsel's decision not to request DNA from the boyfriend was based on sound strategic reasoning. Defendant cannot show that Trial Counsel's decision was professionally unreasonable, nor can Defendant show actual prejudice from the alleged violation. Therefore, Defendant's first claim of ineffective assistance of counsel must be denied as it fails under *Strickland*.

22. Second, Defendant argues Trial Counsel provided ineffective assistance of counsel by failing to request a continuance to locate the 911 caller who described the incident. In the 911 call, the caller described the aggressor holding the

---

[33] *Escalera*, 2018 WL 2406009, at *3 (Del. May 25, 2018) (TABLE).
[34] Trial Counsel Aff. Resp. to Def.'s Rule 61 Mot. 6.
[35] Tr. Trial 173:21-174:23, Apr. 5, 2017.

9

knife as wearing a green shirt and tan shorts.[36] Trial Counsel believed the 911 caller would have been an unfavorable witness for the defense because at the time of Defendant's arrest, he was wearing a green shirt and tan shorts.[37] In addition, Defendant was identified at the scene by a police officer who arrested Defendant shortly thereafter, and later testified at trial.[38] Trial Counsel was in the best position to decide how and when to proceed with trial, and whether or not to call the 911 witness.[39] The strong presumption that Trial Counsel's actions were professionally reasonable under the circumstances cannot be overcome as deciding whether or not to call a witness that could be hostile to the defense was in the discretion of Trial Counsel. Therefore, under *Strickland*, Defendant's second ineffective assistance claim must be denied.

23.     Finding that Defendant's ineffective assistance of counsel claims fail, the Court now considers Rule 61 Counsel's Motion to withdraw pursuant to Rule 61(e)(6). After reviewing the record to determine if there were any other meritorious grounds for relief and concluding that there are no such grounds, Rule 61 Counsel filed a motion to withdraw as counsel. Withdrawal may be appropriate when

---

[36] Trial Counsel's Aff. Resp. to Def.'s Rule 61 Mot. 8.

[37] *Id.*

[38] The officer testified that Defendant was wearing a green shirt and tan shorts. Tr. Trial 82:6-7, Apr. 5, 2017.

[39] *Strickland*, 466 U.S. at 690-91 ("[I]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances applying a heavy measure of deference to counsel's judgments.").

"counsel considers the movant's claim to be so lacking in merit that counsel cannot ethically advocate it, and counsel is not aware of any other substantial grounds for relief available to the movant."[40]  Additionally, the Court must also conduct a review of the record to determine whether Defendant's motion contains any reasonable ground for relief.[41]

24.    Rule 61 Counsel has stated that she undertook a thorough analysis of the record to evaluate Defendant's claims and determined that the claims do not have enough merit to be ethically advocated.

25.    The Court has reviewed the record and determined Defendant's postconviction relief motion presents no colorable claims.  Therefore, Rule 61 Counsel shall be permitted to withdraw.

**NOW, THEREFORE, this 30th day of October, 2020, for the reasons stated herein, Defendant's Motion for Postconviction Relief is hereby DENIED.   Postconviction Counsel's Motion to Withdraw is hereby GRANTED.**

**IT IS SO ORDERED.**

**The Honorable Andrea L. Rocanelli**

---

[40] Super. Ct. Crim. R. 61(e)(6).
[41] *State v. West*, 2013 WL 6606833, at *3 (Del. Super. Ct. Dec. 12, 2013).

11