# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,           )
                             )
        v.                   )     ID No. 2010002207
                             )
NOAH SHARP,                  )
                             )
        Defendant.           )

Submitted: February 19, 2026
Decided: March 4, 2026

*Upon Defendant Noah Sharp's Motion for Postconviction Relief,*
**DENIED.**

*Upon Motion to Withdraw as Counsel of Patrick J. Collins, Esquire,*
**GRANTED.**

## **ORDER**

Julie M. Donoghue, Esquire, Deputy Attorney General, DEPARTMENT OF JUSTICE, 820 North French Street, Wilmington DE 19801, Attorney for the State of Delaware.

Patrick J. Collins, Esquire, COLLINS PRICE WARNER WOLOSHIN, 8 East 13th Street, Wilmington, DE 19801, Attorney for the Defendant Noah Sharp.

Noah Sharp, James T. Vaughn Correctional Center, 1181 Paddock Road, Smyrna, DE 19971, Defendant.

**WHARTON, J.**

This 4th day of March, 2026, upon consideration of Defendant Noah Sharp's ("Sharp") Motion for Postconviction Relief ("PCR Motion"),[1] the Motion to Withdraw as Counsel of Patrick J. Collins,[2] Sharp's' Response to the Motion to Withdraw,[3] the State's Response,[4] and the record in this case, it appears to the Court that:

1.    Sharp was convicted of first degree murder, possession of a deadly weapon during the commission of a felony, and conspiracy first degree by a jury in October 2022 and sentenced to life in prison plus 28 years on all charges. His direct appeal was unsuccessful.[5]  Sharp filed his *pro se* PCR Motion and request for appointment of counsel on August 20, 2024.[6]  The Court ordered that counsel be appointed for Sharp on August 23, 2024[7] and on January 23, 2025, Patrick J. Collins, Esquire was appointed to represent Sharp.[8]  Mr. Collins, having conscientiously reviewed the record and having found no meritorious postconviction claims, filed a Motion to Withdraw as Counsel pursuant to Superior Court Criminal Rule 61(e)(7) on July 7, 2025.[9]  Mr. Collins also informed Sharp that he had 30 days to file a

---

[1] PCR Mot., D.I. 143.
[2] Mot. to Withdraw, D.I. 170.
[3] Def.'s Resp., D.I. 173
[4] State's Resp., D.I. 175.
[5] *Sharp v. State,* 2024 WL 3251586 (Del. 2024).
[6] D.I. 135 (*pro se* PCR Motion); D.I. 136 (Mot. for Appointment of Counsel).
[7] D.I. 139.
[8] D.I. 141.
[9] D.I. 146.

response to the Motion to Withdraw as Counsel.[10]  A good deal of activity occurred subsequent to Mr. Collins filing his motion as set out in his letter of November 7, 2025.[11]  None of that activity is particularly significant save Mr. Collins' receipt on August 18th of Sharp's undated letter appearing to be a response to the Motion to Withdraw as Counsel,[12] Sharp's October 6th letter telling Mr. Collins he was satisfied with his August letter response while adding additional points for the Court's consideration,[13] and Sharp's letter to the Court asking that Mr. Collins be removed and another attorney be appointed in his place.[14]  That latter request was denied by the Court.[15]  The State submitted its Response on February 19, 2026.[16]

2.  In its Order on direct appeal, the Delaware Supreme Court briefly set out the following facts:

> The murder, which received a considerable amount of publicity in New Castle County, occurred two years before Sharp's trial. The victim—Madison Sparrow—was an eleventh grader at Newark Charter High School, from which Sharp had graduated in June 2020. Sparrow and Sharp had dated when Sparrow was in the ninth grade, but Sparrow eventually broke off the relationship.
>
> Sparrow had been friends with Sharp's codefendant and coconspirator, Annika Stalczynski, who also attended

---

[10] *Id.*
[11] D.I. 154.
[12] *Id.* at Ex. D.
[13] *Id.* at Ex. G.
[14] *Id.* at Ex. H (D.I. 152).
[15] D.I. 153.
[16] D.I. 159.

Newark Charter. After Sparrow broke up with Sharp, Sharp began to spend time with Stalczynski. Sharp, who was troubled by the breakup, convinced Stalczynski that Sparrow had been speaking poorly of her and even wanted to fight her. Although these reports did not cause Stalczynski to "hate" Sparrow, she admitted that she "didn't like" her.

Sharp and Stalczynski's shared disdain for Sparrow somehow evolved into a conspiracy to kill her. On October 2, 2020, under the guise of walking with Sparrow to get some ice cream, Stalczynski led Sparrow down a trail in a wooded area behind an elementary school in Newark. Sharp was lying in wait there with a baseball bat.

According to Stalczynski's testimony at Sharp's trial, when Sparrow saw Sharp, she was "shocked." Stalczynski added that "[Sharp] came out and just started swinging the bat ... connecting with her body .... [Sharp] started hitting on [Sparrow's] side over and over again. And she fell."

After Sparrow fell, Sharp continued to bludgeon her with the bat, now "[i]n her head." Sparrow died from her wounds, and Sharp and Stalczynski buried her body in a shallow grave under an Interstate 95 overpass in Newark.[17]

3. Sharp's *pro se* PCR motion alleges three grounds for relief: (1) ineffective assistance of counsel ("IAC") due to his counsel's alleged "failure to investigate the co-defendants [sic] mental health and statements, DNA evidence on the bat;" (2) denial of a fair trial "because of a bias [sic] trial judge who made [unspecified] prejudicial remarks to defendant which would lead a reasonable person to believe the judge was bias [sic];" and (3) the defendant was denied his right to a

---

[17] *Sharp,* 2024 WL 3251586, at *1.

4

fair trial due to the failure of the Court to strike a juror who had previous knowledge of the case.[18]

    4.    In his Motion to Withdraw, Mr. Collins presents a thorough recapitulation of the evidence presented at trial as well as the procedural history of the case.[19] He also carefully assesses Sharp's claims for relief.[20] He finds Sharp's IAC claims "not particularly concrete."[21] He notes that the DNA on the bat was a mixed profile that was too complex to analyze.[22] Nor is it clear how Sharp could have been prejudiced give his admission to striking Madison Sparrow with it.[23] Regarding the codefendant, Annika Stalczynski, there is no evidence that she had a mental health problem.[24] Moreover, counsel cross-examined her effectively.[25] As to an alleged denial of a fair trial because of biased judicial comments directed at Sharp, Mr. Collins was unable to find any such statements in the record.[26] The Court's comments at sentencing were harsh, but not inappropriately so given that the Court was explaining its findings of aggravating circumstances.[27] In any event, Sharp was not prejudiced

---

[18] D.I. 135.
[19] Mot. to Withdraw, D.I. 146.
[20] *Id.* at 33.
[21] *Id.* at 39.
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.* at 40.
[27] *Id.*

by the Court's sentencing comments due to the mandatory sentence of life imprisonment.[28] Finally, Mr. Collins observes that Sharp's juror claim is procedurally barred by Rule 61(i)(4) as it was previously litigated on direct appeal.[29]

5.  Sharp initially sent Mr. Collins an undated letter, received by Mr. Collins on August 18, 2024, in which he identifies several postconviction relief issues. They are:

**Prosecutorial Misconduct**

Prosecutor misled witnesses during testimony
Allowed witnesses to converse with each other during the trial after the trial began

**Police Misconduct**

Police led me to believe I was being interviewed and not interrogated
Police officers used illegal methods of interrogation to get an illegally obtained confession
Police should have conducted a mental on me for the interrogation

**Ineffective Assistance of Counsel**

Trial counsel advised my family that they did not have a strategy to marshal a defense
Ring camera has video footage of my codefendant throwing evidence in my backyard that my attorney never used
ADHD never used as a mitigating factor
Prior to the incident I was hit in the head and suffered a concussion. My attorney never used the information to see

---

[28] *Id.*
[29] *Id.* at 40-41.

6

if I were fit for trial. The concussion occurred two weeks prior to the incident
I suffered another concussion the same day as the interrogation[30]

6. In Sharp's letter to Mr. Collins dated October 6, 2025, he "recap[s]," "summarizes everything," and allows that his earlier letter "should suffice," as his response to the Motion to Withdraw.[31] In it he lists in bullet point fashion issues he would like the Court to consider. They are:

- Police misconduct and interrogation
- Police coercion
- Never knew I was being interrogated, under the impression of an interview
- Credibility of my co-defendant (Annika Stalczynski ("Annika))
- Annika lied to the police several times to Delaware State Police Investigators
- Annika threw evidence in my backyard to frame me for the crime (Ring Camera never presented)
- ADHD since I was four years' old (medical documents forthcoming)
- ~~Autism (medical documents forthcoming)~~ – wasn't confirmed
- Multiple concussions before the police interview/interrogation[32]

7. In its response, the State contends that all of Sharp's claims except his IAC claims are barred, either by Rule 61(i)(3) because they were not raised at trial or

---

[30] D.I. 154 at Ex D.
[31] *Id.* at Ex. G.
[32] *Id.*

on direct appeal, or in the case of his juror issue, by Rule 61(i)(4) because it was formerly adjudicated at trial and on direct appeal.[33]  The State argues that Sharp's IAC claims fail because they are entirely conclusory and are insufficiently detailed to prove IAC.[34]

8     Under Delaware Superior Court Rules of Criminal Procedure, a motion for postconviction relief can be barred for time limitations, successive motions, procedural default, or former adjudication.[35]  A motion exceeds time limitations if it is filed more than one year after the conviction becomes final, or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than one year after the right was first recognized by the Supreme Court of Delaware or the United States Supreme Court.[36]  A second or subsequent motion is considered successive and therefore barred and subject to summary dismissal unless the movant was convicted after a trial and "pleads with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted" or "pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or

---

[33] State's Resp. at 12-14, D.I. 159.
[34] *Id.* at 14-18.
[35] Super. Ct. Crim. R. 61(i).
[36] Super. Ct. Crim. R. 61(i)(1).

the Delaware Supreme Court, applies to the movant's case and renders the conviction ... invalid."[37] Grounds for relief "not asserted in the proceedings leading to the judgment of conviction" are barred as procedurally defaulted unless the movant can show "cause for relief" and "prejudice from [the] violation."[38] Grounds for relief formerly adjudicated in the case, including "proceedings leading to the judgment of conviction, in an appeal, in a post-conviction proceeding, or in a federal habeas corpus hearing" are barred.[39] The bars to relief do not apply either to a claim that the court lacked jurisdiction or to a claim that pleads with particularity that new evidence exists that creates a strong inference of actual innocence,[40]

11. Before addressing the merits of a defendant's motion for postconviction relief, the Court must first apply the procedural bars of Superior Court Criminal Rule 61(i).[41] If a procedural bar exists, then the Court will not consider the merits of the postconviction claim.[42]

12. This PCR is both timely and Sharp's first. Therefore the bars of Rules 61(i)(1) and (2) do not apply. Further, his IAC claims, which could not have been raised before, are not barred by Rule 61(i). However, none of his other claims, except

---

[37] Super. Ct. Crim R. 61(i)(2); Super. Ct. Crim. R. 61(d)(2).
[38] Super. Ct. Crim. R. 61(i)(3).
[39] Super. Ct. Crim. R. 61(i)(4).
[40] Super. Ct. Crim. R. 61(i)(5).
[41] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[42] *Id.*

9

his juror claim, were "asserted in the proceedings leading to the judgment of conviction." All of them are barred as procedurally defaulted by Rule 61(i)(3). Sharp has not attempted to show "cause for relief" or "prejudice from [the] violation" in order to make the bar inapplicable. His juror claim, which was adjudicated in both this Court and on direct appeal is barred as formerly adjudicated by Rule 61(i)(4).

13. The Court turns then to the only remaining claims – his IAC claims. To successfully bring an IAC claim, a claimant must demonstrate: (1) that counsel's performance was deficient; and (2) that the deficiencies prejudiced the claimant by depriving him of a fair trial with reliable results.[43] To prove counsel's deficiency, a defendant must show that counsel's representation fell below an objective standard of reasonableness.[44] Moreover, a defendant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal.[45] Conclusory and unsupported claims of prejudice are insufficient to establish ineffective assistance; a defendant must make and substantiate concrete claims of actual prejudice.[46] Similarly, conclusory and unsupported claims that counsel failed to investigate a defendant's case are insufficient to establish IAC.[47] "[A] court must indulge in a

---

[43] *Strickland v. Washington*, 466 U.S. 668, 688 (1984).
[44] *Id.* at 667-68.
[45] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).
[46] *Dawson v. State,* 673 A.2d 1186, 1196 (Del. 1996).
[47] *Id.*

strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[48]  A successful Sixth Amendment claim of IAC requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[49]  An inmate must satisfy the proof requirements of both prongs to succeed on an IAC.  Failure to do so on either prong will doom the claim and the Court need not address the other.[50]

14.    The Court turns first to the prejudice prong because an analysis of that prong makes it unnecessary to address the performance prong.  The evidence against Sharp was enormously strong.   What follows is a summary of some of the overwhelming evidence the State offered to the jury to convince it to convict Sharp. The State presented downloaded iCloud conversations between Sharp and Stalczynski discussing their plans to murder Madison Sparrow and dispose of her body.[51]  It played a surveillance video from McClarey Elementary School showing Sharp with a bat in his hand near the woods where he bludgeoned Madison Sparrow to death with that bat.[52]  Four Sobieski employees testified that there was a young white female and a young black male carrying a shovel and a bucket coming out of

---

[48] *Strickland*, 446 U.S. at 689.
[49] *Id.* at 694.
[50] *Strickland,* 466 U.S. at 697; *Ploof v. State,* 75 A.3d 811, 825 (Del. 2013) ("*Strickland* is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant.").
[51] *See,* State's Tr. Ex. 33.
[52] *See,* State's Tr. Ex. 78.

the woods leading to the burial site.[53] Sharp's footprint was located in the mud near Madison Sparrow's shallow grave.[54] If that evidence were not enough, the State presented the damning evidence of Stalczynski's testimony and Sharp's videotaped confession, including a video of Sharp leading investigators to Madison Sparrow's body.[55] In response, Sharp makes no effort to explain how his conclusory allegations created a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Were he to have made that effort, it would have been futile. The State's case was so strong that there is no reasonable probability that, but for counsel's alleged unprofessional errors, the result of the trial would have been different. The Court has no doubt about the reliability of the verdict. Sharp's IAC claim fails.

15. Accordingly, having carefully reviewed the record itself, the Court concurs with Mr. Collins that Sharp's postconviction claims are wholly without merit such that he could not ethically advocate them. It reaffirms its decision to decline Sharp's invitation to appoint new postconviction counsel as that request is similarly without merit.

**THEREFORE, for** the reasons stated above Noah Sharp's Motion for

---

[53] Trial Tr. (Oct. 26, 2022) at 120:21-122:1. Stalczynski was a young white female and Sharp was a young black male.
[54] *See,* State's Tr. Ex. 101.
[55] *See,* State's Tr. Exs. 79, 85.

Postconviction Relief is **DENIED**.  The Motion to Withdraw as Counsel of Patrick

J. Collins, Esquire is **GRANTED**.

**IT IS SO ORDERED.**

/s/ Ferris W. Wharton
Ferris W. Wharton, J.

13