**THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | ID No. 1712008053 |
| | ) | |
| IVAN GALINDEZ, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: August 5, 2022
Decided: November 18, 2022

**MEMORANDUM OPINION AND ORDER**

On this 18th day of November 2022, upon consideration of Defendant, Ivan Galindez's ("Defendant") Motion for Postconviction Relief ("Motion"),[1] trial counsel's affidavit in response to claims of ineffective assistance of counsel,[2] the State's response to the Motion,[3] the parties' supplemental briefing,[4] and the record in this case, it appears that:

## I.      Factual and Procedural History

1.      On December 12, 2017, a police officer of the Wilmington Police Department was dispatched in response to a 911 call reporting a robbery. Upon arrival, the officer observed Jorge Luis Franco Martinez (the "victim") in obvious

---

[1] D.Is. 31, 42.

[2] D.I. 44.

[3] D.I. 45.

[4] D.Is. 48, 51.

distress, bleeding from the face and head areas. Also present at the scene was Richard Canongo, who stated he had called 911 when he heard the victim yelling for help.

2. The victim reported to the police that, at approximately 9:00 p.m. on December 12, 2017, he drove to Rodriguez Food Market, near W. 4th and Connell Streets in Wilmington, to buy groceries. When the victim was returning to his parked vehicle, he was approached by a man who demanded money. When the victim refused, the man struck him in the face and head with a metal object (possibly brass knuckles) repeatedly, eventually knocking him to the ground. Amidst the struggle, the victim managed to enter his vehicle, but was unable to drive away before the man broke the driver' side window and held a pointed object to his neck. The victim then turned over his money and the man fled.

3. On December 13, 2017, the day after the incident, the victim spotted the man who robbed him in the same area and the man was dressed the same as the night before. The victim took a picture of the man on his cellphone and later provided the photo to the police. Based on the photo, the police obtained a warrant and arrested Defendant on December 14, 2017. When Defendant was processed, a photograph was taken of him and included in a six-pack photo line-up. When presented with the photo line-up, the victim immediately identified Defendant as the man who robbed him. The photo array was later introduced at trial.

4. At trial, the victim testified to the foregoing, explained that he saw Defendant's face clearly on the night of the attack, and identified Defendant in court as his assailant. The person who called 911 after the incident, Richard Canongo, also testified at trial. He gave his account of the incident, which was substantially consistent with the victim's. Canongo also testified that the man pictured in the photograph taken by the victim was the man who assaulted and robbed the victim.

5. On August 16, 2018, after a two-day jury trial, Defendant was found guilty and convicted of one count of Robbery First Degree, one count of Assault First Degree, two counts of Possession of a Deadly Weapon During the Commission of a Felony, and one count of Criminal Mischief under $1,000 Damage to Property.[5] On January 18, 2019, Defendant was sentenced to fifty-four years of Level V imprisonment, followed by concurrent probation for two years and six months.[6] Defendant filed a timely Notice of Appeal to the Delaware Supreme Court.[7] On October 30, 2019, the Delaware Supreme Court affirmed Defendant's convictions.[8]

6. On January 17, 2020, Defendant filed a *pro se* Motion for Postconviction Relief and Motion for Appointment of Counsel, under Superior Court Criminal Rule

---

[5] D.I. 15.

[6] D.I. 23.

[7] D.I. 27.

[8] D.I. 30.

61.[9]  On July 9, 2020, the Court granted Defendant's Motion for Appointment of Counsel.[10]  On September 24, 2021, an Amended Motion for Postconviction Relief (the "Amended Motion") was filed by Defendant's postconviction counsel on his behalf.[11]  On January 5, 2022, Defendant's trial counsel filed an affidavit in response to Defendant's claims of ineffective assistance of counsel.[12]  On March 9, 2022, the State filed a response to Defendant's Amended Motion for Postconviction Relief.[13]  On June 1, 2022, Defendant filed a supplement[14] to the Amended Motion, to which the State filed a supplemental response[15] on August 5, 2022.  This matter is now ripe for the Court's consideration and decision.[16]

## II.  Standard of Review

7.  Superior Court Criminal Rule 61 is the exclusive remedy for persons "in custody under a sentence of this court seeking to set aside the judgment of conviction

---

[9] D.Is. 31, 32.

[10] D.I. 35.

[11] D.I. 42.

[12] D.I. 44.

[13] D.I. 45.

[14] D.I. 51.

[15] D.I. 48.

[16] The sole argument raised in Defendant's Amended Motion is based upon purported newly discovered evidence, including trial counsel's alleged ineffectiveness in failing to identify the evidence before trial.  Defendant also raised several other ineffective assistance of counsel claims in his original *pro se* Motion.  The Court will first address the argument regarding the newly discovered evidence and then address the *pro se* arguments.

. . . ."[17] In considering a motion for postconviction relief, the Court "must first consider the procedural requirements of Rule 61 before addressing any substantive issues."[18] The procedural bars of Rule 61 include: timeliness, repetitiveness, procedural default, and former adjudication.[19] This is Defendant's first Rule 61 Motion and it was filed within one year after the judgment of conviction became final. The Motion is therefore timely and not repetitive. The Court will then address whether the Motion satisfies other procedural requirements under Rule 61(i), and if yes, will consider the Motion on its merits.

### III. Analysis

#### A. Newly Discovered Evidence

8. Defendant contends that there is new exculpatory evidence not presented at trial that warrants postconviction relief. The State argues that this claim is procedurally barred under Rule 61(i)(3) because it was not asserted in the proceedings leading to the judgment of conviction and does not fall within the exceptions provided under Rule 61(i)(5).

---

[17] Super. Ct. Crim. R. 61(a)(1).

[18] *Bradley v. State*, 135 A.3d 748, 756-57 (Del. 2016) (citing *Younger v. State*, 580 A.2d 552, 554 (Del. 1990)). *See also* Super. Ct. Crim. R. 61(i) (setting forth Rule 61's procedural bars).

[19] Super. Ct. Crim. R. 61(i)(1)-(4).

9. Rule 61(i)(3) provides that "[a]ny ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows (A) [c]ause for relief from the procedural default and (B) [p]rejudice from violation of the movant's rights."[20] Here, Defendant contends that he has become aware of a new eyewitness named Robert Perry Figgs, who is willing to testify that Defendant "acted in self-defense" in the incident for which he was convicted.[21] Specifically, the new eyewitness will testify that the victim "initiated an argument with [Defendant] and "threw the first punch." The claim of self-defense, supported by testimony of a proposed eyewitness, could have been, but was not, raised at trial or upon direct appeal.[22] Defendant also fails to show "cause for relief" from the procedural default. Defendant contends that the failure to present the self-defense claim at trial was due to his trial counsel's deficient performance in failing to discover and identify the eyewitness. As will be discussed in detail below, the Court finds that the trial counsel's alleged failure to

---

[20] Super. Ct. Crim. R. 61(i)(3).

[21] The Court notes that Defendant's Amended Motion states that Defendant's postconviction counsel "has discovered the names and contact information of two previously unknown witnesses" who "will contradict evidence used to convict [Defendant] at his trial," without supplying more information regarding those additional witnesses. It is not until Defendant submitted his supplement to the Amended Motion that he provided the information regarding the new eyewitness, including his name, date of birth, physical address, and proposed testimony. This is the only new evidence presented in the Motion.

[22] *See e.g.*, *State v. Prince*, 2022 WL 211704, at *4 (Del. Super. Jan. 24, 2022) (finding prosecutorial misconduct claims that could have been but were not raised on direct appeal barred as procedurally defaulted).

6

identify this eyewitness or pursue a self-defense claim falls short of ineffective assistance of counsel, which is required to constitute cause for relief from the procedural default.[23] Therefore, the petition for relief based on purported newly discovered evidence that supports a self-defense claim is barred under Rule 61(i)(3).

10. Defendant's newly discovered evidence claim could otherwise proceed if it satisfies one of the exceptions provided under Rule 61(i)(5). Rule 61(i)(5) provides that the bars to relief in paragraphs (1)-(4) of Rule 61(i) do not apply to a claim that "pleads with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted."[24] "Actual innocence" requires "more than innocence of intent; it requires new evidence that a person other than the petitioner committed the crime."[25]

11. In *State v. Taylor*, the defendant asserted in his second postconviction motion that there was new evidence that negated the requisite intent for his

---

[23] *See Shelton v. State*, 744 A.2d 465, 475 (Del. 2000) ("Attorney error which falls short of ineffective assistance of counsel does not constitute cause for relief from a procedural default.") (internal citation omitted).

[24] Super. Ct. Crim. R. 61(i)(5); 61(d)(2). The procedural bars are also inapplicable to a claim that the Court lacked jurisdiction or a claim that pleads with particularity that a new, retroactive rule of constitutional law applies to the movant's case and renders the conviction invalid. *Id.* It is clear from the Motion and related filings that the only exception implicated in this case is the "actual innocence" exception.

[25] *Purnell v. State*, 254 A.3d 1053, 1095 (Del. 2021) (internal citation omitted).

conviction of First Degree Murder, the particular offense at issue in that case, and thus proved that he was actually innocent of that crime.[26] This Court rejected that argument, finding that the defendant offered no evidence that shows he did not kill the victim.[27] The *Taylor* court relied upon a 10th Circuit case, *Long v. Peterson*, where the federal court found that "actual innocence means factual innocence, not legal innocence", and that the defendant was not factually innocent, because he "admits his actions caused his father's death", although he claimed "he only intended to hurt his adoptive father, not kill him."[28] The *Taylor* court held that the proffered evidence that purported to show the defendant's lack of intent fails to meet Rule 61's actual innocence standard.[29]

12. In the instant case, the proffered newly discovered evidence likewise fails to show that Defendant is factually innocent of the underlying crimes of which he was convicted. Defendant does not contend that he did not rob or assault the victim or cause his injuries; nor does he allege that someone else committed those crimes. The alleged new evidence simply purports to show that Defendant conducted all

---

[26] *State v. Taylor*, 2018 WL 3199537, at *7 (Del. Super. June 28, 2018).

[27] *Id.* at *8.

[28] *Id.* at *7 (discussing *Long v. Peterson*, 291 Fed. Appx. 209 (10th Cir. 2008)). The *Taylor* court also quoted languages from a United States Supreme Court case that explained the meaning of actual innocence. *See Id.* (quoting *Sawyer v. Whitley*, 505 U.S. 333, 340-41 (1992)) ("A prototypical example of "actual innocence" in a colloquial sense is the case where the State has convicted the wrong person of the crime.").

[29] *Id.* at *8. The *Taylor* decision was later affirmed by the Delaware Supreme Court upon appeal. *Taylor v. State*, 206 A.3d 825 (TABLE), 2019 WL 990718 (Del. Feb. 27, 2019).

those acts out of self-defense. This concerns the legal sufficiency of Defendant's conviction at best and does not create an inference that Defendant was "actually innocent in fact." Accordingly, Defendant's claim regarding the newly discovered evidence fails to overcome Rule 61's procedural bar.

## B. Ineffective Assistance of Counsel

13. Defendant in his *pro se* Motion raised several claims based on ineffective assistance of counsel.[30] It is well-established under Delaware law that a claim of ineffective assistance of counsel is not barred under Rule 61(i)(3) because it could not have been raised in the proceedings leading to his conviction.[31] The ineffective assistance of counsel claims are first raised in this Motion and were not formerly adjudicated. Therefore, these claims are not procedurally barred, and the Court will consider them on the merits.

14. To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate that: (1) his defense counsel's representation "fell below an objective standard of reasonableness;" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

---

[30] These claims were raised both in the original *pro se* Motion and the Amended Motion filed by Defendant's postconviction counsel. The Court will first address the one claim raised in the Amended Motion and then address the *pro se* claims.

[31] *See, e.g.*, *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994) (internal citations omitted).

different."[32]  As to the first prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[33]  And a fair assessment of counsel's performance should avoid the "distorting effects of hindsight" and should "evaluate the [challenged] conduct from counsel's perspective at the time."[34]  As to the second prong, a defendant must "make, and substantiate, specific allegations of actual prejudice."[35]

*(1) Counsel's Alleged Failure to Identify Witnesses*

15.  In the Amended Motion, Defendant contends that his trial counsel was ineffective by failing to discover and identify the eyewitness who is willing to provide testimony to support a self-defense claim.[36]  The Court disagrees.  The Court finds that the alleged failure to identify the newly discovered eyewitness does not satisfy either prong of the ineffective assistance of counsel analysis.

16.  First, Defendant fails to assert that reasonable legal assistance would require the trial counsel to discover such a witness or to pursue a self-defense

---

[32] *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984); *see also Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

[33] *Strickland*, at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.").

[34] *Id.*

[35] *Gattis v. State*, 697 A.2d 1174, 1178-79 (Del. 1997) (internal citations omitted).

[36] Specifically, Defendant's Amended Motion states that "[t]he cumulative errors in this case include the deficient performance by Defendant's Trial Counsel in failing to discover and identify the aforementioned witness to buttress Defendant's claim of innocence."

claim.[37] Defendant also fails to explain why the trial counsel should have been able to identify the witness or how a reasonable investigation would have revealed the existence and/or identity of the witness. To the contrary, Defendant's trial counsel, in a sworn affidavit, states that he "utilized the investigator of the Public Defender's office to identify and secure potential sources of video from Downtown Visions' cameras located at 3rd and Connell Streets, and 4th and Broom Streets" for the date of the incident. Defendant also did not provide his trial counsel with the names of any witnesses that could assist in his defense. Therefore, Defendant fails to demonstrate that the trial counsel's defense of the case fell below any objective standard of reasonableness by failing to identify this single self-defense witness.

17. Moreover, even if the proffered witness was identified before and presented the testimony regarding self-defense at trial, Defendant has failed to show that there is a reasonable probability that the ultimate result would not have been the same. There was ample evidence presented at trial that supports Defendant's conviction. On the day after the incident, the victim took a picture of Defendant, who was dressed in the same clothes as the night before, and located in the same area where the incident occurred. An eyewitness testified at trial that the man in the picture taken by the victim was the victim's assailant. The victim identified

---

[37] There is no indication in the record that Defendant ever spoke with his trial counsel about self-defense as a potential trial strategy.

Defendant in a photo line-up as well as in open court. Both the victim and the eyewitness testified at trial how the incident occurred and unfolded, which testimony was substantially consistent with each other. It is not probable that a reasonable jury would disregard the above evidence and instead adopt the "self-defense" version of the incident from Defendant's newly proposed witness.

18. Furthermore, the limited information given regarding the proffered testimony appears insufficient to support a valid self-defense claim. Defendant simply states that the new witness will testify that Defendant "acted in self-defense" and the victim "initiated an argument with [Defendant] and "threw the first punch."[38] There is no evidence offered to support a finding that the subsequent use of force, including usage of a metal object (possibly brass knuckles), upon the victim's face and head was "immediately necessary" to protect Defendant "on the present occasion."[39] That the victim "initiated an argument" and "threw the first punch," even if believed to be true, is certainly insufficient to justify Defendant's subsequent breaking into the victim's car and concomitant robbery of Defendant. Therefore, it is not reasonably probable that the self-defense theory would have prevailed and changed the result of the trial.

---

[38] It is noted that the Motion fails to provide an affidavit from the new witness that illustrates in detail what the proffered testimony includes; nor does the Motion explain why one was not provided.

[39] *See* 11 *Del. C.* § 464(a).

*(2) Counsel's Failure to Object to Eyewitness Identification Jury Instruction*

19.    Defendant raised several *pro se* arguments regarding ineffective assistance of counsel.  One of the arguments is that his trial counsel failed to object to the jury instruction regarding eyewitness identification given by the trial court and failed to provide the court with an alternative jury instruction that purportedly lists a number of factors the jury should consider in examining the accuracy of the eyewitness identification.

20.   As an initial matter, the propriety of the eyewitness identification jury instruction given by the trial court in this case has already been argued before and adjudicated by the Delaware Supreme Court upon direct appeal.  To the extent that Defendant casts it as an ineffective assistance of counsel claim, the Court finds it to be without merit.  Contrary to what Defendant claims here, Defendant's trial counsel *did* propose a more expansive eyewitness identification jury instruction based on model instructions used in Massachusetts and New Jersey. The trial Court denied defense counsel's proposed jury instructions and proceeded with the standard Delaware Superior Court instruction on eyewitness identification. There is also no conceivable prejudice to Defendant, because the trial court's decision to not give the instruction proposed by Defendant was affirmed on appeal.

*(3)    Counsel's Alleged Failure to Provide Defendant with the Evidence Against Him Before Trial*

21.  In his *pro se* Motion, Defendant also claims that his trial counsel failed to provide him pretrial discovery materials, rendering him unable to make an informed decision about his case.  Defendant's trial counsel, in his sworn affidavit, states that he reviewed the evidence Defendant would confront at trial with him both at the first case review on April 23, 2018 and the final case review on July 23, 2018.  The Court finds it unnecessary to further inquire into whether and how Defendant's trial counsel discussed the evidence against Defendant with him, as Defendant fails to make or substantiate any specific allegations of the prejudice suffered by him.[40]  In particular, Defendant, now being aware of all the evidence that has been presented against him at trial, fails to specify how his case would have come out differently if he was informed of the incriminating evidence earlier (assuming his trial counsel did not do so before trial).  For that reason, Defendant's ineffective assistance of counsel claim must fail.[41]

---

[40] *See Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."); *Ploof v. State*, 75 A.3d 811, 825 (Del. 2013) ("*Strickland* is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant.").

[41] In his *pro se* Motion, Defendant also states, without any supporting detail, that the State suppressed a video depicting the suspect and victim during the robbery.  However, Defendant failed to raise this issue at trial or in his direct appeal and is now barred from pursuing it in his

## IV. Conclusion

22. For the reasons stated above, the Court finds that the proffered newly discovered evidence does not warrant relief in the postconviction proceeding because the evidence does not create a strong inference that Defendant was factually innocent of the underlying crime. The Court also finds no evidence that Defendant's counsel's representation was substandard or that Defendant suffered any prejudice therefrom, which are both required to establish a valid ineffective assistance of counsel claim. Accordingly, Defendant's Motion for Postconviction Relief is hereby **DENIED**.

**IT IS SO ORDERED.**

_____
Sheldon K. Rennie, Judge

Original to Prothonotary

Cc:  Monil D. Amin, DAG
     Raj Srivatsan, Esq.
     Kevin J. O'Connell, Esq.

---

request for postconviction relief. Moreover, Defendant has not established, or even attempted to articulate, cause for relief from the procedural default. Super. Ct. Crim. R. 61(i)(3) ("[a]ny ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows (A) [c]ause for relief from the procedural default and (B) [p]rejudice from violation of the movant's rights).