# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | ID No. 1709011232 |
| | ) | |
| ROBERT POTTS, | ) | |
| a.k.a. TAHLAL WAL-IKRAM | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: June 5, 2023
Decided: August 31, 2023

## ORDER DENYING POSTCONVICTION RELIEF
## AND GRANTING COUNSEL'S MOTION TO WITHDRAW

Upon consideration of the Defendant Robert Potts a.k.a Tahlal Wal-Ikram's[1]

("Mr. Wal-Ikram" or the "Defendant") Motion for Postconviction Relief[2] (the

"Motion"), his several supplements and amendment thereto,[3] the State's Response,[4]

---

[1] Robert Potts legally changed his name to Tahlal Wal-Ikram, however, his Superior Court records do not reflect this change. There is no dispute that Robert Potts and Tahlal Wal-Ikram are one in the same. Hereinafter, Tahlal Wal-Ikram will be referred to as "Mr. Wal-Ikram" or the "Defendant."

[2] Docket Item (D.I.) 63.

[3] D.I. 99, 110, 113. In addition, Defendant has docketed an application entitled: "A Rule (33)" (D.I. 84). The Court has reviewed Defendant's Rule 33 filing and determined that his claims and arguments overlap with the instant Motion. *See Wilson v. State*, 2006 WL 1291369, at *1 n.3 (Del. May 9, 2006) (determining that a court examining such filings must ignore the label an inmate attaches to his claim, and instead, consider the true substance of the claim). Accordingly, this decision also resolves D.I. 84.

[4] D.I. 107.

the Motion to Withdraw as Counsel,[5] the affidavits of both trial counsel,[6] Superior Court Rules of Criminal Procedure Rule 61 ("Rule 61"), and the record in this matter, it appears to the Court that:

## I. FACTUAL AND PROCEDURAL BACKGROUND

1. On September 16, 2017, the Defendant was pulled over by Detective Matthew Rosaio of the Wilmington Police Department for a defective registration light above the license plate.[7] During the course of the traffic stop, while the Defendant was reaching into an opaque duffle bag, Detective Rosaio asked the Defendant if any weapons were in the car. The Defendant replied in the affirmative.[8] Detective Rosaio ultimately seized the Defendant's weapon as well as a large quantity of illegal drugs from the vehicle.[9]

2. Subsequently, the Defendant was indicted by a grand jury for (1) Possession of a Firearm by a Person Prohibited; (2) Possession of Ammunition by a Person Prohibited; (3) Carrying a Concealed Deadly Weapon; (4) Drug Dealing; (5)

---

[5] D.I. 95. When a document or transcript has been included in the Appendix to the Motion to Withdraw as Counsel, (D.I. 96) the page references to that appendix are included as "A__"."
[6] D.I. 105 and 106.
[7] D.I. 62 ¶ 2.
[8] *Id*. ¶ 3; D.I. 21 at 59:18-20.
[9] *Id*.

Possession of a Firearm During the Commission of a Felony; (6) Illegal Possession of a Controlled Substance; and (7) Resisting Arrest.[10]

3. On December 15, 2017, the Defendant's initial trial counsel, Elliot M. Margules, Esquire, filed a motion to suppress arguing Detective Rosaio's question regarding the presence of firearms in the car exceeded the scope of the traffic stop.[11] The Motion to Suppress was denied by this Court on February 2, 2018.[12]

4. Approximately, one month later, Jonathan Layton, Esquire, entered his appearance as trial counsel[13] and filed a supplemental motion to suppress[14] which was withdrawn on May 2, 2018.[15]

5. The Defendant was reindicted on June 4, 2018 to amend the Drug Dealing Count to Drug Dealing Cocaine and/or Heroin as opposed to Drug Dealing Heroin.[16] Prior to trial, the parties stipulated that the Defendant was previously convicted of two felonies – the first on June 8, 2007, and the second on October 16, 2008.[17]

---

[10] D.I. 3.
[11] D.I. 9; A015-025.
[12] D.I. 12; D.I. 21 at 54:9-62:2.
[13] D.I. 16.
[14] D.I. 22.
[15] D.I. 23.
[16] D.I. 29.
[17] D.I. 30.

6. The case proceeded to trial, and during trial, the Court granted Defendant's motion to dismiss the resisting arrest charge.[18] On the third day of trial, the jury returned a verdict of guilty on all the remaining Counts of the indictment.[19] Subsequently, the Defendant was sentenced to a total of 12 years of Level 5 time followed by varying levels of probation.[20]

7. The Defendant timely appealed, and the Delaware Supreme Court affirmed the Defendant's convictions.[21]

## II. DEFENDANT'S MOTION FOR POSTCOVICTION RELIEF

8. The Defendant timely filed, *pro se*, the instant Motion[22] and Motion for Appointment of Counsel.[23] Defendant alleged ineffective assistance of counsel claims against Messrs. Margules and Layton.[24] In addition, Defendant identifies one additional ground for relief: prosecutorial misconduct against Timothy Maguire, Esquire.[25] The Court granted Defendant's application for counsel[26] and Natalie S. Woloshin, Esquire, was appointed to represent Defendant in his postconviction

---

[18] D.I. 33. The State entered a nolle prosequi on Count 6 and the Court granted a Motion for Judgment of Acquittal on Count 7 at the close of State's evidence.
[19] *Id*.
[20] D.I. 39.
[21] *Potts v. State*, 2019 WL 7369199 (Del. Dec. 30, 2019).
[22] D.I. 63.
[23] D.I. 64.
[24] D.I. 61.
[25] *Id*.
[26] D.I. 70.

4

proceedings. Ms. Woloshin filed a Motion to Withdraw as Counsel.[27] In her motion, Ms. Woloshin reports that, after careful review of Defendant's case, Defendant's claims are so lacking in merit that she cannot ethically advocate for them; and further, that she is not aware of any other substantial grounds for relief.[28]

9. Under Superior Court Criminal Rule 61(e)(7):

> If counsel considers the movant's claim to be so lacking in merit that counsel cannot ethically advocate it, and counsel is not aware of any other substantial ground for relief available to the movant, counsel may move to withdraw. The motion shall explain the factual and legal basis for counsel's opinion and shall give notice that the movant may file a response to the motion within 30 days of service of the motion upon the movant.[29]

10. Ms. Woloshin provided Defendant with a copy of her withdrawal motion and advised Defendant of his ability under Rule 61(e)(7) to file a response thereto.[30] Defendant contested Ms. Woloshin's motion.[31] Defendant's trial counsel, Messrs. Margules and Layton, filed affidavits addressing Defendant's Motion.[32] The

---

[27] D.I. 95.
[28] *Id*. at 1, 22-23.
[29] Super. Ct. Crim. R. 61(e)(7).
[30] D.I. 94.
[31] D.I. 99. Mr. Wal-Ikram's response reiterated his bases for the Motion and claims Ms. Woloshin should have withdrawn earlier. D.I. 99 at 1. However, Ms. Woloshin explained in her timely requests for continuances that she needed additional time to investigate the record and Mr. Wal-Ikram's additional claims pursuant to her obligation as post-conviction counsel. *See e.g.*, D.I. 79, 83, and 93.
[32] D.I. 105 and 106.

State opposed Defendant's Motion.[33] Defendant, replied to the State's opposition[34] and subsequently filed an amended motion for postconviction relief.[35]

## III.   RULE 61 PROCEDURAL REQUIREMENTS

11.    Postconviction relief is a "collateral remedy which provides an avenue for upsetting judgments that have otherwise become final."[36] Before addressing the merits of Defendant's Motion, the Court must consider procedural requirements for relief set forth in Rule 61(i).[37] If a procedural bar exists, the Court will not consider the merits of the postconviction claim.[38]

12.    Rule 61(i)(1) bars a motion for postconviction relief if the motion is filed more than one year from the final judgment of conviction;[39] this bar is inapplicable as Defendant's Motion was timely. Rule 61(i)(2) bars successive motions for postconviction relief;[40] this bar is inapplicable as this is Defendant's first postconviction motion. Rule 61(i)(3) bars relief if the postconviction motion includes claims that were not asserted in prior proceedings leading to the final judgment, unless the movant shows cause for relief from the procedural bars and prejudice from

---

[33] D.I. 107.
[34] D.I. 110.
[35] D.I. 113. Defendant's amendment does not raise new claims, the amendment does however, supplement Defendant's previous arguments.
[36] *Flamer v. State*, 585 A.2d 736, 745 (Del. 1990).
[37] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[38] *Id*.
[39] Super. Ct. Crim. R. 61(i)(1).
[40] Super. Ct. Crim. R. 61(i)(2).

a violation of the movant's rights.[41]  Moreover, Rule 61(i)(4) bars relief if the postconviction motion includes grounds for relief formerly adjudicated in any proceeding leading to the judgment of conviction, in an appeal, or in a postconviction proceeding.[42]  Rule 61(i)(3) and (i)(4) are inapplicable to allegations of ineffective assistance of counsel that, in all but the rarest of circumstances, could not have been raised on direct appeal.[43]  Defendant failed to raise his prosecutorial misconduct complaints on direct appeal, as required by the rules of this Court.  To the extent Defendant has shown cause for his failure to raise this claim before alleging ineffective assistance of counsel, the Court assesses this claim through that lens. Accordingly, the Court will address Defendant's Motion on the merits.

## IV.  DISCUSSION

### A.  Ineffective Assistance of Counsel

13.  A claim of ineffective assistance of counsel is reviewed under the two-part *Strickland* test.[44]  A claimant asserting ineffective assistance of counsel must demonstrate that: (i) his defense counsel's representation fell below an objective

---

[41] Super. Ct. Crim. R. 61(i)(3).
[42] Super. Ct. Crim. R. 61(i)(4).
[43] *State v. Coverdale*, 2018 WL 259775, at *2 (Del. Super. Ct. Jan. 2, 2018).
[44] *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Neal v. State*, 80 A.3d 935, 946 (Del. 2013).

7

standard of reasonableness, and (ii) there is a reasonable probability that, but for counsel's error(s), the result of his proceedings would have been different.[45]

14.   For the first prong – deficient performance – the burden is on the claimant to show that counsel's conduct fell below an objective standard of reasonableness, "*i.e.*, that no reasonable lawyer would have conducted the defense as his lawyer did."[46]  There is a strong presumption that counsel's representation was reasonable,[47] and "[i]t is not this Court's function to second-guess reasonable [ ] tactics" engaged by trial counsel.[48]  Indeed, an attorneys strategic or tactical choices made after thorough investigation of the relevant law and facts are virtually unchallengeable.[49]

15.   In addition, one claiming ineffective assistance "must make specific allegations of how defense counsel's conduct actually prejudiced the proceedings, rather than mere allegations of ineffectiveness."[50]  This second prong requires the

---

[45] *Strickland*, 466 U.S. at 688-94; *see also Alston v. State*, 2015 WL 5297709, at *3 (Del. Sept. 4, 2015).
[46] *Green v. State*, 238 A.3d 160, 174 (Del. 2020) (citing *Burger v. Kemp*, 483 U.S. 776, 791 (1987)).
[47] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).
[48] *State v. Drummond*, 2002 WL 524283, at *1 (Del. Super. Ct. Apr. 1, 2002).
[49] *Green*, 238 A.3d at 174.
[50] *Alston*, 2015 WL 5297709, at *3 (citing *Wright*, 671 A.2d at 1356); *Monroe v. State*, 2015 WL 1407856, at *5 (Del. Mar. 25, 2015) (citing *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996)); *Zebroski v. State*, 822 A.2d 1038, 1043 (Del. 2003).

claimant to show that "there is a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding would have been different."[51]

16.     Again, to summarize, a defendant must prove *both* deficient attorney performance *and* resulting prejudice to succeed in making an ineffective assistance of counsel claim.  Failure to prove either will doom his claim, and the Court need not address the other.[52]

17.     There are a few situations that the United States Supreme Court has recognized to be so egregious that an ineffectiveness claimant need not prove the prejudice prong of the traditional *Strickland* test.  In *United States v. Cronic*, the Court set out three "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."[53]  These are: (i) where there was complete denial of counsel at a critical stage of the proceeding;[54] (ii) where "counsel entirely fails to subject the prosecution's case to meaningful adversarial

---

[51] *Starling v. State*, 130 A.3d 316, 325 (Del. 2015) (quoting *Strickland*, 466 U.S. at 694).
[52] *Strickland*, 466 U.S. at 697; *Ploof v. State*, 75 A.3d 811, 825 (Del. 2013) ("*Strickland* is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant"); *State v. Hamby*, 2005 WL 914462, at *2 (Del. Super. Ct. Mar. 14, 2005).
[53] *United States v. Cronic*, 466 U.S. 648, 658 (1984).
[54] *Id*. at 659.

testing";[55] and, (iii) where "counsel is called upon to render assistance under circumstances where competent counsel very likely could have not . . ."[56]

18.    Generally, Defendant seeks to invoke the *Cronic* standard, claiming that he was denied counsel altogether "when both attorneys failed to do a complete investigation of all facts of the [Defendant's] case and did not come up with a proper defense at trial."[57]  Before the Court will presume prejudice under *Cronic*, "there must be a complete failure of counsel."[58]  And, as set out below, there was nothing even close to a "complete failure of counsel."  Indeed, Defendant's contentions exhibit more of either his complete disagreement with or complete misunderstanding of the professional decisions both attorneys made, and the professional acts counsel took—acts taken with, at least, some favorable results—in Defendant's defense. Thus, Defendant's claims will all be subject to the traditional *Strickland* analysis.

### 1.    Pretrial Claims

19.    In Defendant's Motion, supplements, and amendment, he raises ineffective assistance of counsel claims against pretrial counsel, Mr. Margules. Specifically, Defendant alleges, Mr. Margules, was ineffective in relation to the

---

[55] *Id.*

[56] *Bell v. Cone*, 535 U.S. 685, 696 (2002).

[57] D.I. 63 at 3.

[58] *Jackson v. Carroll*, 161 F. App'x. 190, 193, 2005 WL 3477556, at *2 (3d Cir. Dec. 20, 2005); *State v. Jackson*, 2008 WL 5048424, at *18 n.134 (Del. Super. Ct. Nov. 25, 2008).

motion to suppress by failing to: (1) attack Detective Rosaio's credibility and motives; (2) bring up that the Defendant had provided his license to Detective Rosaio; (3) ask Detective Rosaio whether the Defendant was under arrest; and (4) emphasize (i) the validity of the stop, and (ii) that a citation was introduced.[59] In order to prevail on this claim, Defendant must prove, (1) deficient performance, and (2) resulting prejudice.[60] He fails to do so.

20.    First, Defendant's claims are belied by the record. With respect to attacking Detective Rosaio's credibility and motives, Mr. Margules questioned the Detective regarding why he felt the need to conduct an additional investigation into the registration light after Defendant had already been arrested.[61] Further, Mr. Margules called the Defendant to the stand and elicited testimony from him that the light was functioning properly[62] and admitted documents from a DMV inspection into evidence that indicated the light was functioning properly.[63]

21.    Defendant next claims Mr. Margules was ineffective for not bringing up that the Defendant had provided his driver's license to Detective Rosaio. The Defendant, however, himself took the stand and testified that he provided his driver's

---

[59] D.I. 63, Mot. at 2; D.I. 110 at 1-3; D.I. 113 at 2.
[60] *Strickland*, 466 U.S. at 688-94.
[61] D.I. 21 at 22:1-24:3.
[62] *Id*. at 32:5-9.
[63] *Id*. at 29:22-30:23.

license to Detective Rosaio as soon as he came to the driver side window.[64]  The Court did not find the Defendant's testimony credible and credited Detective Rosaio's version of events instead.[65]

22.  The Defendant next claims Mr. Margules was ineffective for failing to ask the Detective if the Defendant was ever under arrest.  Mr. Margules declares he likely did not ask the question because an officer's subjective belief on whether the Defendant was under arrest was irrelevant to the grounds for the suppression motion.[66]

23.  Lastly, the Defendant alleges Mr. Margules was ineffective for failing to emphasize the validity of the stop and to check if a traffic citation was issued to the Defendant.  Mr. Margules  elicited testimony and presented evidence that there was no basis for the traffic stop because the license plate light was operable.  In addition, Mr. Margules, in his affidavit, attests he likely did not ask Detective Rosaio if the Defendant was issued a traffic citation because it was never alleged he had issued one, and whether a traffic citation was issued or not did not impact the reasonableness of the underlying stop.[67]  A traffic citation was not required to arrest and prosecute the Defendant for the charges he was indicted on.

---

[64] *Id*. at 34:18-35:15.
[65] *Id*. at 58:20-59:14.
[66] D. I. 105 ¶ 3.
[67] D. I. 105 ¶ 4.

24.     Second, a criminal defense attorney is given wide latitude in making strategic trial decisions; this extends to the conduct of cross-examination.[68]  The questions to be asked and how a given cross-examination is conducted are tactical decisions.[69]  When challenging those decisions, the movant has the burden of supplying precisely what information would have been obtained had counsel conducted the cross as the complaining inmate desired and just how this information would have changed the result of his trial.[70]

25.     To the extent Defendant now disagrees with the manner the testimony was conducted, Mr. Margules has explained the information elicited and that he avoided asking certain questions was because of their lack of strategic value.

26.     Additionally, "[w]hen a defendant is represented by counsel, the authority to manage the day-to-day conduct of the defense rests with the attorney." An attorney's informed decision as to what evidence to admit and whom to call is a tactical decision that deserves great weight and deference.  Indeed, "the United States Supreme Court [has] held that the attorney possesses the right to decide certain strategic and tactical decisions, including what witnesses to call, whether and how to conduct cross-examination, what trial motions should be made, and what evidence

---

[68] *State v. Powell*, 2016 WL 3023740, at *25 (Del. Super. Ct. May 24, 2016).
[69] *Outten v. State*, 720 A.2d 547, 557 (Del. 1998) ("Whether to call a witness, and how to cross-examine those who are called are tactical decisions.").
[70] *See Outten*, 720 A.2d at 557 (quoting *U.S. v. Rodriguez*, 53 F.3d 1439, 1449 (7th Cir. 1995)).

13

should be introduced." Defendant has thus failed to overcome the strong presumption that his counsel acted reasonably and on that basis alone his ineffectiveness claim against Mr. Margules must fail.

### 2. Trial Claims

27. The Defendant's ineffective assistance of counsel claims against Mr. Layton arise from Mr. Layton's: (1) withdrawal of a supplemental motion to suppress; (2) failure to file a motion for acquittal after the Court granted the motion for acquittal related to Defendant's resisting arrest charge; and (3) failure to object for a number of reasons, including (i) the admission of a prior conviction, (ii) testimony regarding the lab report, and (iii) point out that there was no citation and Defendant was never under arrest.[71] Again, in order to prevail on this claim, Defendant must prove, (1) deficient performance, and (2) resulting prejudice.[72] He fails to do so.

28. With respect to Mr. Layton's withdrawal of a supplemental suppression motion, both Mr. Layton and the Defendant's Postconviction counsel concur that Mr. Layton's professional responsibilities prevented him from pressing the motion. Trial counsel has a duty not to make frivolous arguments to the Court, and it is Mr. Layton's belief that the arguments set forth in the supplemental motion had already

---

[71] D.I. 63, Mot at 4; D.I. 110 at 3-8; D.I. 113 at 1-3.
[72] *Strickland*, 466 U.S. at 688-94.

14

been considered by the Court.[73]  Next, Defendant claims Mr. Layton was ineffective for failing to file a motion for judgment of acquittal, after the judgment of acquittal on the resisting arrest charge was granted.[74]  As to the other charges, Mr. Layton asserts it is his belief there was no basis in law or fact to advance any motions for acquittal on any other counts.[75]

29.     The decision whether to file a given motion is a strategic decision and a matter of professional judgment.  Such a decision will be upheld if it is reasonable.[76]  A defendant cannot demonstrate prejudice by defense counsel's withdrawal of or failure to file any motion if that motion were likely to fail.[77]  Defendant has failed to overcome the strong presumption that Mr. Layton acted reasonably[78] and therefore, Defendant's ineffective assistance claims related to the supplemental motion to suppress and motion for judgment of acquittal must fail.[79]  Furthermore, Defendant

---

[73] D.I. 106 ¶ 20.
[74] D.I. 60 at 60:5-17.
[75] D.I. 106 ¶ 23.
[76] *See Pennewell v. State*, 2005 WL 578444, at *1 (Del. Jan. 26, 2005).
[77] *See Poteat v. State*, 2007 WL 2309983, at *1 (Del. Aug. 14, 2007); *Bratcher v. State*, 2008 WL 2475741, at *1 (Del. June 20, 2008).
[78] *Burns*, 76 A.3d at 788 ("Under *Strickland*, the strategic decisions made by counsel are entitled to a strong presumption of reasonableness.").
[79] *See State v. McGlotten*, 2011 WL 987534, at *4 (Del. Super. Ct. Mar. 21, 2011), aff'd, 2011 WL 3074790 (Del. July 25, 2011) ("To restate the requirements of *Strickland*, a defendant must establish two things, not just one: that trial counsel's performance was deficient **and** that but for that deficiency, the outcome of the proceedings would have been different.  If a defendant cannot establish both prongs, then the ineffective assistance of counsel claim fails.") (emphasis in original).

failed to address the other *Strickland* showing – that, but for Mr. Layton's conduct, the outcome of the trial would have been different (*i.e.*, that Defendant would have been acquitted of the charges of which he was convicted).[80] Accordingly, Defendant's claims alleging ineffectiveness assistance of counsel fail for this reason too.

30. In Defendant's final claim, he asserts Mr. Layton was ineffective for failing to object at various moments during trial. Specifically, the Defendant contends Mr. Layton was ineffective for failing to object: (1) when the nature of his prior conviction came into evidence; (2) during Detective Rosaio's testimony and pointing out that no citation was ever issued to the Defendant and that the Defendant was not under arrest; and (3) to testimony regarding heroin.[81]

31. Turning first to the Defendant's claim that Mr. Layton was ineffective for failing to object when the nature of Defendant's prior convictions came into evidence. Though the Court finds that counsel was not ineffective, some explanation is in order. The Defendant was previously convicted of two felonies, the first of which made him a person prohibited from possessing a firearm. The State and Defense entered into a stipulation that the Defendant was a person prohibited, as a

---

[80] *Wright*, 671 A.2d at 11356 ("Mere allegations of ineffectiveness will not suffice. A defendant must make specific allegations of actual prejudice to substantiate them.").
[81] D.I. 63 at 4.

result, his status could be presented to the jury without the name or type of felony. During the defense examination of the Defendant, however, Mr. Layton asked the Defendant whether he had ever sold drugs. The Defendant answered no. Whereupon a sidebar ensued, and the prosecution informed the Court the Defendant was previously convicted of drug dealing. Mr. Layton indicated it was his intent to limit the question to the last 48 hours, however, the Court ruled that since the question posed no time limitation and Defendant denied selling drugs, the State would be permitted to question the Defendant about the conviction for drug dealing.[82]

32. Thus, Mr. Layton could not in good faith object to the State's introduction of his prior felony conviction of drug dealing since Mr. Layton's own questioning opened the door to the introduction of it. Moreover, Mr. Layton in his affidavit indicated the question was posed as part of a broader trial strategy to show the Defendant as a reformed man, and he did not expect the Defendant to perjure himself.[83] Thus, the Defendant has failed to overcome the presumption that Mr. Layton's representation was reasonable under the circumstances.

33. To the extent such a question constituted ineffective assistance of counsel, this Court finds the Defendant suffered no prejudice. The Court issued a

---

[82] D.I. 21 at 126:6-11.
[83] D.I. 106 ¶ 11.

jury instruction that indicated the Defendant's prior felony conviction was only to be considered in judging the credibility of the witness.[84]

34.     The Defendant next appears to suggest that Mr. Layton should have reargued the legality of the stop at trial.  Specifically, Defendant argues that Mr. Layton was ineffective for failing to object during Detective Rosaio's testimony; and point out no citation was issued, and that the Defendant was not under arrest.  This Court, in denying the Defendant's motion to suppress, had already ruled the stop was legal, and therefore, Mr. Layton had no good faith basis for objecting to or rearguing these issues.  Accordingly, the Defendant has failed to overcome the presumption that Mr. Layton's representation was reasonable in this respect.

35.     Finally, the Defendant claims Mr. Layton was ineffective for failing to object to the testimony that heroin was found in  one of the bags.  The Court does not understand the nature of the Defendant's claims in this respect.  The State's witness, Forensic Analytical Chemist from the Division of Forensic Science, testified that while most of the substances seized and tested in this case were identified as cocaine, one sample contained a mixture of cocaine and heroin.[85]  This testimony was consistent with the Laboratory Report provided during discovery.[86]  Accordingly, there was no basis for Mr. Layton to object.

---

[84] D.1.61 at 27:9-18.
[85] D.I. 59 at 192:13-23.
[86] *See* D.I. 96 at A236-37.

36.    In sum, the Defendant has failed to overcome the presumption that Mr. Layton's representation was reasonable.

**B.    Prosecutorial Misconduct**

37.    Lastly, the Defendant claims the prosecutor, Mr. Maguire, engaged in prosecutorial misconduct by introducing the nature of the Defendant's felony conviction to the jury and by allegedly mischaracterizing the narcotics found in the bags.[87]   With respect to the first claim, as discussed above, the nature of the Defendant's previous felony conviction was admitted with permission of the Court and only after the Defendant denied ever having sold drugs.  No misconduct occurred. With respect to his second claim, any reference to heroin was permissible given the language in the reindictment[88] and the evidence contained in the Laboratory Report. Again, no misconduct occurred.

---

[87] D.I. 63 at 4-5.

[88] The indictment alleged the Defendant, "did knowingly possess with intent to deliver any morphine, opium, salt, isomer, or salt of an isomer thereof, including heroin as described in 16 *Del. C.* § 4714, or any mixture containing any such controlled substance and/or cocaine, or any mixture containing cocaine." D.I. 96 at A093-95.

19

## V.    RULE 61 COUNSEL'S MOTION TO WITHDRAW

38.    After reviewing the record to determine if there were any meritorious grounds for relief and concluding no such grounds existed, Ms. Woloshin filed a motion to withdraw as counsel pursuant to Rule 61(e)(7). The Court must also conduct its own review of the record to determine whether Defendant's Motion is devoid of any, at least, arguable postconviction claims.[89]

39.    To evaluate Defendant's postconviction claims, and to determine whether Ms. Woloshin's motion to withdraw as counsel should be granted, the Court should be satisfied that Ms. Woloshin conducted a truly conscientious examination of the record and the law for claims that could arguably support Defendant's Rule 61 motion. Ms. Woloshin has stated that she undertook a thorough analysis of the record to evaluate Mr. Wal-Ikram's claims and determined that the claims do not have merit to be ethically advocated. Ms. Woloshin also reviewed the record to determine if any other meritorious grounds for relief exist and found none. Finally, the Court has reviewed Mr. Wal-Ikram's Motion and had found no meritorious grounds for relief.

40.    After careful review of the record, the Court concludes that Mr. Wal-Ikram's claims are without merit, and no other substantial grounds for relief exist. He has not met the heavy burden under *Strickland* of demonstrating that his attorneys'

---

[89] *State v. Caulk*, 2021 WL 2662250, at *4 (Del. Super. Ct. June 29, 2021), *aff'd*, 2022 WL 320575 (Del. Feb. 2, 2022).

representation fell below an objective standard of reasonableness and that, but for their alleged errors, the outcome of his case would have been any different. Accordingly, Mr. Wal-Ikram's Motion is DENIED and Ms. Woloshin's Motion to Withdraw as Counsel is GRANTED.

**IT IS SO ORDERED**.


*/s/ Patricia A. Winston*
**Judge Patricia A. Winston**

21