**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

|                      |   |                       |
|----------------------|---|-----------------------|
| STATE OF DELAWARE    | ) |                       |
|                      | ) |                       |
| v.                   | ) | Case No. 1712014868A  |
|                      | ) |                       |
| JEREMY BENSON,       | ) |                       |
|                      | ) |                       |
| Defendant.           | ) |                       |
|                      | ) |                       |

Submitted: August 19, 2024
Decided: November 6, 2024

## ORDER DENYING POSTCONVICTION RELIEF

Upon consideration of the Defendant Jeremy Benson's Amended Motion for Postconviction Relief (the "Motion"),[1] his several submissions,[2] the State's Responses,[3] the affidavits of trial counsel,[4] Superior Court Criminal Rule 61 ("Rule 61"), and the record in this matter, it appears to the Court that:

## I.    FACTUAL AND PROCEDURAL BACKGROUND

These are the facts as the Court finds them based on the record. On February 26, 2018, a New Castle County grand jury indicted Benson with Rape in First

---

[1] D.I. 177.

[2] D.I. 180; D.I. 182; D.I. 189; D.I. 194; D.I. 197.

[3] D.I. 196; *see also* D.I. 173.

[4] D.I. 184; *see also* D.I. 162.

Degree.[5] The matter proceeded to a jury trial in this Court on March 4, 2019.[6] After a four-day trial, the jury could not reach a unanimous verdict, and the Court declared a mistrial.[7] The case was retried, and on June 28, 2019, the Defendant was convicted of Attempted Rape First Degree (a lesser-included offense of Rape First Degree).[8]

On November 1, 2019, this Court sentenced Benson to 20 years of incarceration followed by descending levels of supervision.[9] Benson timely appealed, and the Delaware Supreme Court affirmed Benson's conviction on November 6, 2020.[10] In April 2021, Benson filed a motion for a new trial.[11]

Two weeks later, Benson timely filed a motion for postconviction relief (the "Original Motion") claiming trial counsel was ineffective for a number of reasons.[12] On May 10, 2021, the Court stayed consideration of Benson's new trial motion until after the Court's resolution of the postconviction motion.[13]

---

[5] D.I. 3.

[6] D.I. 56.

[7] *Id.*

[8] D.I. 77.

[9] D.I. 80.

[10] *Benson v. State*, 242 A.3d 1085 (Del. Nov. 6, 2020) (TABLE).

[11] D.I. 99.

[12] D.I. 100.

[13] D.I. 103.

On the same day, the Court appointed postconviction counsel ("Postconviction Counsel") to represent Benson in these proceedings.[14] Postconviction Counsel was appointed to the case on December 7, 2021, and requested additional time to review the record and determine what to file.[15] The State did not oppose Postconviction Counsel's request, and the Court extended the deadline to file a revised postconviction motion to April 8, 2022.[16]

In March of 2022, Benson continued to file *pro se* motions despite the appointment of counsel.[17] Postconviction Counsel requested an additional two-week extension of the filing deadline to meet with Benson.[18] At this time, Postconviction Counsel informed the Court that Benson had advised appointed counsel that he wished to discharge him and proceed *pro se*.[19] The Court granted the request to move the filing deadline to April 22, 2022.

---

[14] D.I. 104. Benson informed the Court that there was an incorrect date on the original order, and the Court filed an updated order appointing counsel on June 10, 2021. *See* D.I. 106.

[15] D.I. 110.

[16] D.I. 111.

[17] *See* D.I. 116.

[18] D.I. 118.

[19] *Id*.

On April 5, 2022, Postconviction Counsel informed the Court that Benson wished to proceed *pro se* after an in-person colloquy.[20] The Court held a hearing regarding representation of Benson's postconviction motion on June 24, 2022,[21] and the Court granted Benson's motion to proceed *pro se*.[22]

On July 1, 2022, the Court issued an order instructing the State to send Benson his complete file and a copy of his Original Motion and to notify the Court when these materials have been sent.[23] Two weeks later, the State contacted the Court to provide notice that the State had mailed Benson's file and a copy of the Original Motion.[24]

On July 19, 2022, the Court set the initial deadline for Benson's Motion for September 9, 2022.[25] On July 26, 2022, Benson requested the transcripts of the March 2019 jury selection proceedings.[26] On August 9, 2022, the Court granted Benson's motion for transcripts and extended the deadline for submission of his

---

[20] D.I. 121.

[21] *See* D.I. 129.

[22] D.I. 131.

[23] D.I. 132.

[24] D.I. 133.

[25] D.I. 134.

[26] D.I. 135.

Motion so Benson could file with the benefit of the 2019 jury selection transcript.[27] The Court set the updated filing deadline for October 28, 2022.[28]

Shortly before the updated filing deadline, the Court noted that the requested transcript was still being prepared by the Court.[29] To provide Benson sufficient time to review the transcript before filing his Motion, the Court once again moved the deadline for submission of Benson's Motion to December 30, 2022.[30]

Benson filed the instant Motion on December 8, 2022.[31] On December 20, 2022, the Court issued an order setting the schedule for future submissions in the case.[32] The Court instructed Trial Counsel to file an affidavit on or before February 28, 2023.[33] Trial Counsel missed this deadline. In response, Benson filed a motion for default judgment on May 15, 2023.[34]

---

[27] D.I. 138.

[28] *Id*.

[29] D.I. 145. The Court also lifted the stay of proceedings for Benson's motion for a new trial.

[30] *Id*.

[31] D.I. 150.

[32] D.I. 152.

[33] *Id*.

[34] D.I. 155.

On June 8, 2023, this matter was reassigned to this judge.[35] Trial Counsel reached out to the Court on June 27, 2023, to request an extension to file his response.[36]

On June 28, 2023, the Court granted Trial Counsel's request and issued the Fifth Amended Briefing Schedule.[37] Under the updated deadlines, the Court gave Trial Counsel until July 7, 2023, to submit his response.[38] Trial Counsel submitted his affidavit of response on July 7, 2023.[39] Accordingly, the Court denied Benson's motion for default judgment as moot.[40]

On July 11, 2023, Benson moved to stay all proceedings related to his motion for postconviction relief to allow him to file an appeal of the Court's June 28, 2023 order.[41] The Court issued an order on July 25, 2023, staying the instant Motion until Benson's appeal was filed and decided.[42] Benson's appeal was dismissed by the Delaware Supreme Court on August 8, 2023.[43] On August 28, 2023, Benson

---

[35] D.I. 157.

[36] D.I. 160.

[37] D.I. 161.

[38] *Id*.

[39] D.I. 162.

[40] D.I. 164.

[41] D.I. 165.

[42] D.I. 167.

[43] *Benson v. State*, 303 A.3d 51 (TABLE) (Del. Aug. 8, 2023).

contacted the Court to confirm that his appeal had been denied and to request a schedule to submit his reply to Trial Counsel's affidavit.[44]

On September 26, 2023, the Court issued updated submission deadlines.[45] The Court instructed the State to submit its response on or before October 23, 2023.[46] The State requested an extension to file the response because of immovable conflicting work obligations.[47] The Court granted the State's request and updated the State's deadline to November 21, 2023, with any reply from Benson due by December 21, 2023.[48]

The State submitted its response to Benson's Motion on November 21, 2023.[49] Benson filed a motion for enlargement of time to request thirty days to respond,[50] a motion for leave of court to amend his postconviction relief motion, and motion to

---

[44] D.I. 168.

[45] D.I. 170.

[46] *Id*. The State failed to submit its response, and the Court further ordered the State to respond by November 8, 2023.

[47] D.I. 171.

[48] *Id*.

[49] D.I. 173.

[50] D.I. 175.

withdraw his separate motion for a new trial.[51] On December 21, 2023, Benson filed his Reply to the State's Response.[52]

On December 28, 2023, the Court granted Benson's motion for enlargement of time and for leave of court to amend his motion for postconviction relief.[53] The Court's order also set forth the updated briefing schedule for Benson's Motion.[54] The Court instructed Benson to amend his Motion on or before February 6, 2024.[55] Trial Counsel's deadline for filing an affidavit in response was February 26, 2024, and the State's response was due by March 27, 2024.[56]

Instead of amending his Motion, Benson timely submitted a supplemental reply to the State's Response which contained a resubmission of his December 21, 2023 Reply and supplemental grounds and arguments in support of his motion for postconviction relief.[57] Trial Counsel timely submitted his affidavit of response to the Motion.[58] The State failed to submit a response by the set deadline, and Benson

---

[51] D.I. 176.

[52] D.I. 177.

[53] D.I. 179.

[54] *Id*.

[55] *Id*.

[56] *Id*.

[57] D.I. 180.

[58] D.I. 163.

filed a motion to compel and for enlargement of time on April 11, 2024.[59] In response, the State, via letter, relied on its Response and provided a hard copy to Benson.[60] Accordingly, the Court denied the motion to compel as moot and granted the motion for enlargement of time.[61] The Court noted that filings were submitted late in part because Benson's supplemental submissions to the Court were not served on all parties.[62]

On May 20, 2023, Benson filed his Reply to the State's response to the supplemental claims in his Motion.[63] The Court contacted the State, informing the State that its response had failed to address Benson's claims related to prosecutorial misconduct and *Brady* violations.[64] On August 12, 2024, the State filed its supplemental response to address those claims.[65] One week later, Benson submitted his Reply to the State's supplemental response.[66]

---

[59] D.I. 188.

[60] D.I. 190.

[61] D.I. 192.

[62] D.I. 193.

[63] D.I. 194.

[64] D.I. 195.

[65] D.I. 196.

[66] D.I. 197.

## II.  RULE 61 PROCEDURAL REQUIREMENTS

Postconviction relief is a "collateral remedy which provides an avenue for upsetting judgments that otherwise have become final."[67]  Before addressing the merits of Benson's Motion, the Court must consider procedural requirements for relief set forth in Rule 61(i).[68]  If a procedural bar exists, the Court will not consider the merits of the postconviction claim.[69]

Rule 61(i)(1) bars a motion for postconviction relief if the motion is filed more than one year from the final judgment of conviction;[70] this bar is inapplicable as Benson's Motion was timely.  Rule 61(i)(2) bars successive motions for postconviction relief;[71] this bar is inapplicable as this is Defendant's first postconviction motion.  Rule 61(i)(3) bars relief if the postconviction motion includes claims that were not asserted in prior proceedings leading to the final judgment, unless the movant shows cause for relief from the procedural bars and prejudice from a violation of the movant's rights.[72]  Moreover, Rule 61(i)(4) bars relief if the postconviction motion includes grounds for relief formerly adjudicated in any

---

[67] *Flamer v. State*, 585 A.2d 736, 745 (Del. 1990).

[68] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

[69] *Id.*

[70] Super. Ct. Crim. R. 61(i)(1).

[71] Super. Ct. Crim. R. 61(i)(2).

[72] Super. Ct. Crim. R. 61(i)(3).

proceeding leading to the judgment of conviction, in an appeal, or in a postconviction proceeding.[73]

Rule 61(i)(5) creates an exception to the procedural default rule, in cases where there is "a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."[74] To invoke the "miscarriage of justice" exception, there must be both (1) a claim of a constitutional violation and (2) a showing that the claim is "colorable" and "undermine(s) the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."[75]

### A. Ineffective Assistance of Counsel

Rule 61(i)(3) and (i)(4) are inapplicable to allegations of ineffective assistance of counsel that, in all but the rarest of circumstances, could not have been raised on direct appeal.[76] To the extent Defendant has shown cause for his failure to raise this claim before alleging ineffective assistance of counsel, the Court assesses this claim

---

[73] Super. Ct. Crim. R. 61(i)(4).

[74] *Taylor v. State*, 32 A.3d 374, 388 (Del. Oct. 25, 2011).

[75] *Id*. (citing Super. Ct. Crim. R. 61(i)(5)).

[76] *State v. Coverdale*, 2018 WL 259775, at *2 (Del. Super. Jan. 2, 2018).

through that lens. Accordingly, the Court will address Defendant's claims of ineffective assistance of counsel on the merits.

## B. Prosecutorial Misconduct

### 1. Improper Use of False Testimony

Benson claims the prosecutor engaged in prosecutorial misconduct by knowingly presenting the alleged victim's false testimony to obtain his conviction.[77] Benson argues that the State may not use "improper methods calculated to produce a wrongful conviction."[78] The State argues Benson has provided no evidence that the State elicited known false or fabricated testimony or that the State knowingly suborned perjury.

Rule 61(i)(4) provides that "[a]ny ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred."[79] Benson's claim—that the State knowingly elicited false testimony to convict the Benson—was previously adjudicated in 2020 when the Delaware Supreme Court affirmed the judgment of this Court. The Court opined: "Inconsistencies in the Child's statements do not show that the prosecutor knowingly

---

[77] D.I. 150 at 4 ("Ground 3").
[78] *Id.*
[79] Super. Ct. Crim. R. 61(i)(4).

12

suborned perjury. […]  It was within the province of the jury to assess the witnesses'

credibility and determine whether any inconsistencies created a reasonable doubt as

to Benson's guilt."[80]  Because this claim was adjudicated in Benson's appeal,

pursuant to Rule 61(i)(4), Benson's claim of prosecutorial misconduct based on an

alleged use of false testimony is procedurally barred and will not be considered on

the merits.

### 2. Failure to Disclose Exculpatory Evidence as Required under Brady

Benson additionally claims the prosecutor engaged in prosecutorial

misconduct by failing to disclose exculpatory evidence in violation of *Brady v.*

*Maryland*.  It is well established that a colorable *Brady* violation falls under Rule

61(i)(5)'s narrow "miscarriage of justice" exception.[81] Accordingly, the Court will

consider Benson's *Brady* claim under the "miscarriage of justice" exception.  Rule

61(i)(5)'s miscarriage of justice exception does not apply to the bar on formerly

adjudicated claims under Rule 61(i)(4).[82]  Thus, Rule 61(i)(4) does not bar Benson's

*Brady* claim, and the Court will consider this claim on the merits.

---

[80] D.I. 96 at 22.

[81] *Wright v. State*, 91 A.3d 972, 985 (Del. May 19, 2014) (citing *Jackson v. State*, 770 A.2d 506, 515-16 (Del.2001) ("When the *Brady* rule is violated, postconviction relief can not be barred by Rule 61(i)(3) because a *Brady* violation undermines the fairness of the proceeding leading to the judgment of conviction.  Because *Brady* violations strike at the core of a fair trial, the consequences of a failure to comply with *Brady* must be examined carefully.")).

[82] *Id*.

## C. Constitutional Error

Benson alleges that the Court violated his constitutional rights under the 5th, 6th, and 14th Amendments when the trial judge improperly ended the 2019 proceedings by declaring a mistrial.[83] A key feature of jury trials is that "there is no absolute necessity that the jury reach a verdict."[84] Where the jury fails to reach unanimity on a charge, the court declares a mistrial on that charge.[85] The record here shows that the jury was unable to reach a unanimous decision at the conclusion of the evidence at the trial in March 2019. The State requested an *Allen* charge, and the jury received such instructions to encourage jurors to re-examine their opinions.[86] Even with this instruction, the jury was unable to reach a unanimous decision. Thus, the Court properly declared a mistrial following the March 2019 proceedings.

Because Rule 61(i)(5) requires a colorable claim of a constitutional violation, and Benson has not made that showing, his claims of constitutional error regarding the Court's declaration of a mistrial are procedurally barred.

---

[83] D.I. 150 at 3 ("Ground 2").

[84] *Brown v. State*, 369 A.2d 682, 684 (Del. 1976).

[85] *See, e.g., Desmond v. State*, 654 A.2d 821, 824-25 (Del. 1994).

[86] D.I. 173 at 11.

## III.   ANALYSIS

### A.   Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is reviewed under the two-part *Strickland* test.[87]   A claimant asserting ineffective assistance of counsel must demonstrate that: (i) his defense counsel's representation fell below an objective standard of reasonableness, and (ii) there is a reasonable probability that, but for counsel's error(s), the result of his proceedings would have been different.[88]

For the first prong—deficient performance—the burden is on the claimant to show that counsel's conduct fell below an objective standard of reasonableness, "*i.e.*, that no reasonable lawyer would have conducted the defense as his lawyer did."[89] There is a strong presumption that counsel's representation was reasonable,[90] and "[i]t is not this Court's function to second-guess reasonable [ ] tactics" engaged by trial counsel.[91]   Indeed, an attorneys strategic or tactical choices made after thorough investigation of the relevant law and facts are virtually unchallengeable.[92]

---

[87] *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Neal v. State*, 80 A.3d 935, 946 (Del. 2013).

[88] *Strickland*, 466 U.S. at 688-94; *see also Alston v. State*, 2015 WL 5297709, at *3 (Del. Sept. 4, 2015).

[89] *Green v. State*, 238 A.3d 160, 174 (Del. 2020) (citing *Burger v. Kemp*, 483 U.S. 776, 791 (1987)).

[90] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

[91] *State v. Drummond*, 2002 WL 524283, at *1 (Del. Super. Apr. 1, 2002).

[92] *Green*, 238 A.3d at 174.

In addition, one claiming ineffective assistance "must make specific allegations of how defense counsel's conduct actually prejudiced the proceedings, rather than mere allegations of ineffectiveness."[93] This second prong requires the claimant to show that "there is a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding would have been different."[94]

Again, to summarize, a defendant must prove **both** deficient attorney performance **and** resulting prejudice to succeed in making an ineffective assistance of counsel claim. Failure to prove either element will doom his claim, and the Court need not address the other.[95]

In Benson's Motion, supplements, and replies, he raises numerous ineffective assistance of counsel claims against Trial Counsel. Specifically, Benson alleges, Trial Counsel was ineffective for failing to: (1) understand the evidence, or lack thereof, when presenting the Motion of Judgement of Acquittal at the retrial in June 2019; (2) request a polling of the jurors; (3) present, or properly present, the

---

[93] *Alston*, 2015 WL 5297709, at *3 (citing *Wright*, 671 A.2d at 1356); *Monroe v. State*, 2015 WL 1407856, at *5 (Del. Mar. 25, 2015) (citing *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996)); *Zebroski v. State*, 822 A.2d 1038, 1043 (Del. 2003).

[94] *Starling v. State*, 130 A.3d 316, 325 (Del. 2015) (quoting *Strickland*, 466 U.S. at 694).

[95] *Strickland*, 466 U.S. at 697; *Ploof v. State*, 75 A.3d 811, 825 (Del. 2013) ("*Strickland* is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant"); *State v. Hamby*, 2005 WL 914462, at *2 (Del. Super. Mar. 14, 2005).

16

fabrication of the accuser's story; (4) call Dr. Gooden, the accuser's current therapist, as a witness; (5) prepare for cross-examination; (6) investigate the case on his own; and (7) protect Benson's constitutional rights.

Benson's ineffective assistance of counsel claims against Trial Counsel also arise from Trial Counsel's: (1) failure to file a motion for dismissal of the amended indictment of Attempted Rape First Degree; (2) failure to file a motion for an immediate acquittal or dismissal of the original indictment; and (3) failure to object for a number of reasons, including (i) the Trial Court's ruling to not allow the jury to "re-hear" the video of the State's witness' out-of-court statements; (ii) the jury instructions and verdict sheet; (iii) the testimony of two material witnesses; and (iv) the State's knowing and intentional use of false information.

To prevail on his claims for ineffective assistance of counsel, Benson must demonstrate both deficient performance and resulting prejudice. He fails to do so.

Benson's claims are belied by the record. First, with respect to Benson's claims that Trial Counsel failed to understand or properly present the evidence while presenting the Motion for Judgment of Acquittal at the retrial in June 2019,[96] Trial Counsel presented the motion under Rule 29(a), articulated the standard of proof, discussed the presented evidence, and attempted to persuade the trial judge.[97] There

---

[96] D.I. 177 at 1 ("Claim A").

[97] D.I. 162 at 1.

is no evidence in the record to support the claim that Trial Counsel's representation fell below an objective standard of reasonableness.

Benson next claims that Trial Counsel was ineffective for failing to poll the jurors.[98] Trial Counsel admits that he did not poll the jurors but denies that it was ineffective.[99] Benson makes no allegations as to how polling the jury would have changed anything; thus, Benson has failed to establish how he suffered actual prejudice because of any alleged deficiency.[100]

Benson further claims that Trial Counsel failed to properly present the "fabrication of the accuser's story."[101] Trial Counsel, in response, declares he employed a strategy during cross examination to highlight the inconsistencies and timing of the allegations.[102] Further, Trial Counsel states the decision to avoid questioning regarding the out-of-court statements during cross was intentional because there was damaging evidence within the statements.[103] A criminal defense attorney is given wide latitude in making strategic trial decisions, and this latitude

---

[98] D.I. 177 at 4 ("Claim D"); D.I. 150 at 1.

[99] D.I. 162 at 5.

[100] *State v. Johnson*, 2012 WL 1413482, at *4 (Del. Super. Jan. 19, 2012).

[101] D.I. 150 at 2 ("Claim G"); D.I. 177 at 5.

[102] D.I. 162 at 3.

[103] D.I. 162 at 3-4.

extends to the conduct of cross-examination.[104]  The questions to be asked and how

a given cross-examination is conducted are tactical decisions.[105]  When challenging

those decisions, the movant holds the burden of supplying precisely what information

would have been obtained had counsel conducted the cross as the complaining inmate

desired and just how this information would have changed the result of his trial.[106]

Benson failed to meet this burden.  To the extent Benson now disagrees with the

manner the testimony was conducted, Trial Counsel has explained that he avoided

asking certain questions because of their lack of strategic value.

Benson also alleges Trial Counsel was ineffective for failing to call Dr.

Gooden, the accuser's current therapist, as a witness and for failing to properly

prepare for cross-examination.[107]  Benson further claims that Trial Counsel was

ineffective for failing to move for dismissal or acquittal at different stages of the

proceedings[108] and for failing to object to the introduction of evidence throughout the

trial.[109]  Specifically, Benson contends Trial Counsel was ineffective for failing to

---

[104] *State v. Powell*, 2016 WL 3023740, at *25 (Del. Super. May 24, 2016).

[105] *Outten v. State*, 720 A.2d 547, 557 (Del. 1998) ("Whether to call a witness, and how to cross-examine those who are called are tactical decisions.").

[106] *See Outten*, 720 A.2d at 557 (quoting *U.S. v. Rodriguez*, 53 F.3d 1439, 1449 (7th Cir. 1995)).

[107] D.I. 150 at 2 ("Claim H"); *see also* D.I. 177 at 5-6.

[108] D.I. 177 at 3-4 ("Claim B" and "Claim C").

[109] D.I. 177 at 5-10.

object to: (1) the Trial Court's ruling to not allow the jury to "re-hear" the video of the State's witness' out-of-court statements;[110] (2) the jury instructions and verdict sheet;[111] (3) the testimony of two material witnesses;[112] and (4) the State's introduction of evidence and testimony Benson claimed to be false.[113] However, "[w]hen a defendant is represented by counsel, the authority to manage the day-to-day conduct of the defense rests with the attorney."[114] An attorney's informed decision as to what evidence to admit and whom to call is a tactical decision that deserves great weight and deference. Indeed, "the United States Supreme Court [has] held that the attorney possesses the right to decide certain strategic and tactical decisions, including what witnesses to call, whether and how to conduct cross-examination, what trial motions should be made, and what evidence should be introduced."[115] Benson has failed to overcome the strong presumption that his counsel acted reasonably; thus, his ineffectiveness claims against Trial Counsel must fail.

---

[110] D.I. 177 at 5 ("Claim E").

[111] D.I. 177 at 7 ("Claim J").

[112] D.I. 177 at 9 ("Claim M").

[113] D.I. 177 at 10 ("Claim N").

[114] *Cooke v. State*, 977 A.2d 803, 840 (Del. 2009).

[115] Phillips, Jean K. Gilles, and Joshua Allen, *Who Decides: The Allocation of Powers Between the Lawyer and the Client in a Criminal Case?,* 71 OCT. J. KAN. B.A. 28 (2002) (citing *Wainwright v. Sykes*, 433 U.S. at 93 n.1).

Lastly, Benson alleges that Trial Counsel's ineffectiveness denied Benson competent, effective assistance of counsel and, thus, violated his rights under the 6th Amendment.[116] Because Benson has failed to overcome the strong presumption that his counsel acted reasonably, and, as a result, has not demonstrated any ineffectiveness of counsel, Benson's argument that he was denied competent, effective counsel under the 6th Amendment must fail. Indeed, Benson's contentions demonstrate more of either his complete disagreement with or complete misunderstanding of the professional decisions his attorney made, and the professional acts counsel took—acts taken with, at least, some favorable results—in Benson's defense.

## B. Prosecutorial Misconduct

### 1. *Failure to Disclose Exculpatory Evidence as Required under* Brady

Benson claims the prosecutor engaged in prosecutorial misconduct by failing to disclose exculpatory evidence in violation of *Brady*.[117] Benson specifically posits that a heavily redacted 3-page Division of Family Service ("DFS") "suspected child abuse" form containing exculpatory evidence was turned over to defense counsel before trial; however, he contends that the unredacted report should have been

---

[116] D.I. 150 at 3 ("Claim L"); D.I. 177 at 8-9; *see also* D.I. 182 at 12 ("Supplemental Ground 1-0).

[117] *Brady v. Maryland*, 373 U.S. 83 (1963).

provided before trial. The State responds that the State provided the record in entirety; in advance of the second trial, Trial Counsel was in possession of a full unredacted copy of the treatment records, including the DFS "suspected child abuse" form.[118]

The record demonstrates that the entire unredacted DFS file was also provided to Trial Counsel prior to the first trial.[119] Thus, there is no merit to Benson's argument that a *Brady* violation occurred or that the State committed any prosecutorial misconduct which caused him prejudice. Defendant's claims of prosecutorial misconduct due to a *Brady* violation must fail.

Benson further contends that, if this document was disclosed to Trial Counsel prior to trial, Trial Counsel was ineffective for failing to use the exculpatory evidence.[120] The Court considered Benson's other claims of ineffective assistance of counsel above. As stated above, an individual claiming ineffective assistance of counsel must prove **both** deficient performance and resulting prejudice. Here, Benson fails to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional error" of failing to use the 3-page report, "the result of the

---

[118] D.I. 196.

[119] D.I. 53; D.I. 59 at 10.

[120] D.I. 182 ("Supplemental Ground 1-0") ("The Defendant was denied effective assistance of counsel guaranteed by the U.S. Constitution when trial counsel failed to use favorable evidence and witnesses to attack the accuser's credibility.").

proceeding would have been different."[121]  Thus, Benson has failed to demonstrate any resulting prejudice from this alleged error; thus, his ineffectiveness claim against Trial Counsel for failing to use the unredacted DFS report must fail.

### C.    Cumulative Error

Finally, Benson claims that, even if one claim does not merit relief, the cumulative effect of the errors alleged merit relief under Rule 61.[122]  The cumulative error or effect doctrine applies when each error, "standing alone, would not be the basis for reversal."[123]  "Logically, a cumulative error analysis presupposes that errors exist."[124]  The Court sees no errors here, and, thus, there are no errors to accumulate. Accordingly, Benson's cumulative error claim fails.

## IV.    <u>CONCLUSION</u>

After careful review of the record, the Court concludes that Benson's claims are without merit, and no other substantial grounds for relief exist.  He has not met the heavy burden under *Strickland* of demonstrating that his attorney's representation fell below an objective standard of reasonableness and that, but for counsel's alleged errors, the outcome of his case would have been any different.

---

[121] *Starling v. State*, 130 A.3d 316, 325 (Del. 2015) (quoting *Strickland*, 466 U.S. at 694).

[122] D.I. 150 at 4 ("Ground 4").

[123] *Drumgo v. State*, 44 A.3d 922 (TABLE), 2012 WL 1377596, at *1 (Del. Apr. 17, 2012).

[124] *State v. Owens*, 2021 WL 6058520, at *14 (Del. Super. Dec. 21, 2021).

Benson's claims of prosecutorial misconduct in violation of the *Brady* rule are also belied by the record. Thus, Benson's cumulative error claim must fail, as there are no errors to accumulate.

Accordingly, Benson's Motion for post-conviction relief is **DENIED.**

**IT IS SO ORDERED**.


/s/ Patricia A. Winston
**Patricia A. Winston, Judge**




Original to Prothonotary (Criminal Division)
Cc:   Jeremy Benson, *pro se*, SBI No. 00315287
       Diana Dunn, Esquire, Department of Justice
       Brian Chapman, Esquire